## City of Louisville v. Hehemann, etc.

(Decided December 10, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas No. 1).

1. Municipal Corporations—Damages—Garbage.—In an action against a city for damage to property by reason of maintaining a city dump near the same, the city can not escape responsibiilty by showing that individuals also dumped some refuse there, where it is shown that its dump boss was there during all working hours and had control of the situation.

2. Municipal Corporations—Garbage.—Although in the collection and distribution of garbage the city discharges a governmental function, it has no right to take or injure private property, or the use thereof, without making compensation therefor.

3. Municipal Corporations—Private Property for Public Use—Compensation.—Under Section 242 Constitution, cities and other corporations invested with the privilege of taking private property for public use must make compensation therefor.

4. Municipal Corporations—Suits Against.—In an action to recover against a city it was not proper to show that it had satisfied other similar claims, but where counsel for the city asked the witness on cross-examination if he had a suit pending against the city, it was competent to show that his suit was terminated.

5. Argument of Counsel—Bill of Exceptions.—This court will not consider an objection to improper argument of counsel where the same is not certified in the bill of exceptions.

W. J. O'CONNOR and PENDLETON BECKLEY for appellant.

GILBERT BURNETT, BURNETT & BURNETT and BENJAMIN F. GARDNER for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

In 1909 and 1910, Cabel street was used as a city dump. Appellees recovered a judgment for $500 against the City of Louisville for the injury this dump caused to their property and damage in their use of it. They owned and lived in a little two-room house on Pocahontas alley in the "Point." The property reached back 150 feet to Cabel street. In 1909, when the city began to create the nuisance complained of, these two rooms sheltered the appellees and their eight children. The territory of the Point is low and flat and subject to periodical overflows. The city desired to raise the grade of Cabel street, and was encouraged in this move by petition of the residents adjacent to the street, including appellees. The proposed fill extended through the Point for about 2,000 feet.

During the summer months of 1909, this work of filling became in reality a city dump, and especially was this so in the vicinity of the Hehemann home. All sorts of decaying animal and vegetable matter were brought there and dumped day after day. Witnesses tell of seeing on the dump not only back-door refuse and vegetable garbage, but dead rats, cats, dogs, chickens, and barrels of spoiled fish. This became a putrifying mass, from which constantly arose unmentionable odors, and such a flock of flies and vermin as commonly come with carrion, all going to make human existence terrible in that vicinity. Some excuse is offered in behalf of the city by evidence that dead fish, fowls and animals were brought there by individuals—not the city, and without the knowledge of the city's responsible officials. But responsibility cannot be escaped when it is shown that the city kept there every day during working hours a dump boss, who was in a position to control the situation, and when there is abundant evidence to show that the offensive material was so disposed of with his knowledge and direction, and many of these carcasses were dumped from city garbage wagons.

Such conflict as there is in the evidence relates to conditions at different places on the fill. They were not all bad. For instance, toward the corner of Cabel and Fulton, where the street commissioner lived, and also at a place where another city officer lived, the material was cinders and dirt taken from excavations in and about the city.

All of appellees' children were taken down with sickness, which continued from three weeks to a year. Two of them died with meningitis. Their illness began with dysentery and went into typhoid. The attending physician testified that in all probability all the sickness was directly traceable to the unsanitary dump we have described.

In the collection and disposition of garbage, undoubtedly the city acts for the public health, and discharges a governmental function. In this regard, it is an agent or arm of the Commonwealth, and, for that reason, is absolved from liability for the negligence of its employes. But there is an element of wrong complained of in this case which goes beyond that. Conceding that a city dump is necessary for the public good, and that Cabel street was the proper place for it, still the city had no right to take or injure adjacent private property or the occupants in the use thereof without making compensation.

Section 242 of the Constitution requires that municipal and other corporations invested with the privilege of taking private property for public use, shall make just compensation for the property taken, injured, or destroyed by them. City of Paducah v. Allen, 111 Ky., 631; Clayton v. City of Henderson, 103 Ky., 288.

In applying this section the court makes a distinction between injuries to person from negligence on the part of agents or servants of municipal corporations committed when in the discharge of some public duty, and injuries done to property rights, although likewise in the performance of public duties. The case of Board of Park Commissioners v. Prinz, 127 Ky., 460, makes the distinction clear and cites the leading cases on the proposition.

In Madisonville v. Hardman, 29 Ky. L. R., 253, the city maintained an open drain or sewer, which caused disagreeable odors and served as a breeding place for

flies and insects, and injury to the health of Hardman's family. And we said:

"Cities, in the exercise of their governmental functions, may construct sewers, streets and other similar improvements, but they have no right to build a sewer in such a manner that it will discharge at the front door of a citizen the accumulated filth of livery stables, etc., and when guilty of such wanton disregard of the rights of others, they must respond in damages." See also City of Georgetown v. Ammerman, 143 Ky., 209.

In all such cases it is competent to prove sickness and annoyance suffered by the property owner or his family, as these impair his enjoyment and depreciate the usable value of his property.

The instructions limited the recovery to "such sums in damages as you may believe from the evidence will fairly and reasonably compensate them for any diminution, if any, in the value of the use of their property. We cannot agree with appellant's contention that the only damage recoverable under the pleadings is for diminution of the market value. The instructions given by the court substantially conform to the claim set up in the petition as amended, and, in our opinion, state the proper measure of damage.

Appellant complains that the instructions were materially changed, or that one was not given until after argument of its counsel was completed. But these facts are not shown by the record.

Appellant complains that the court refused to discharge the jury in view of an incompetent and prejudicial question asked of a witness by appellee's counsel. It seems that other residents of this vicinity had suits of like character against the city, and some of them were offered as witnesses by appellee. On cross-examination appellant asked one of them, "You have a suit against the city?" to which he responded, "No, I did have." On redirect examination, appellees' counsel asked the witness, "You had a suit against the city and got a judgment and verdict against the city?" If the witness answered, the record does not show it, but appellant immediately objected to the question, and the court, in sustaining the objection, cautioned counsel to refrain from this line of examination, and admonished the jury not to be influenced in making up their verdict by the improper question. It will be seen that the objectionable question, if, indeed, it was so, was brought

out by the question which appellant's counsel propounded on cross-examination. Of course, the city's liability to appellees could not be fixed or enhanced by the fact that it had satisfied or compromised other claims of a similar character, but, if appellant's inquiry tended to show the testimony was affected by interest of the witness, it was competent for appellee to show that he was not interested in order to repel that idea.

Appellant complains of prejudicial misconduct of appellees' counsel in his argument to the jury. By an affidavit which is copied into the bill of exceptions, it appears that counsel for appellees called attention to sanitary precautions on the Isthmus of Panama, and the steps taken in other cities to destroy garbage, with comparisons adverse to Louisville. The court merely certifies that the affidavit was filed. It does not appear from the bill of exceptions that such argument was made. Neither is there anything in the affidavit or the record to indicate the ruling of the court on appellant's objection to the argument. In the absence of such information, we cannot tell whether there was error.

The judgment is affirmed.