## Chesapeake & Ohio Railway Company, et al. v. Caldwell.

(Decided March 5, 1926.)

### Appeal from Pike Circuit Court.

1. Railroads—Railroad Not Liable for Damages Caused by Lack of Culverts Under Switch Track Connected by Another to Main Line. —Railroad company is not liable for damages caused by failure of one building switch track connecting with its main line to properly construct culverts under embankment over which track was laid.

2. Nuisance—Testimony Water Backing Carried Noisome Substances was Relevant to Damages from Temporary Structure.—In action for damages because of failure to properly construct culverts under railroad embankment, causing water to back on plaintiff's property, testimony that water carried upon it offal and other noisome substances creating a smell, held relevant, where culverts could be enlarged and damage was temporary.

3. Nuisance—Instruction to Find Temporary Damages Compensating for Diminution of Property as Residence Held Erroneous as Authorizing Verdict Based on Value of Property Rather than Use.—In action for temporary damages because of water backing on property from railroad embankment, instruction to find damages which would compensate for diminution of property as residence held erroneous as authorizing verdict for difference in value of property rather than diminution of value of use.

4. Nuisance—Testimony as to Amount Property would Have Sold for Before Damage Caused by Overflow Improperly Admitted in Action for Temporary Damage.—In action for temporary damages caused by water backing up from railroad embankment, testimony of plaintiff that she could have sold property for from $5,000.00 to $7,000.00, but at time of trial could not sell it at all, held improperly admitted.

MOORE & CHILDERS and BROWNING & REED for appellants.

PICKLESIMER & STEELE and O. A. STUMP for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

The appellee, Mattie E. Caldwell, is the owner of a tract of land in Boldman, Kentucky, abutting on the right of way of the appellant, C. & O. R. R. She has owned this property for some eighteen or twenty years. On it is a five-room frame dwelling, together with the usual outbuildings. The C. & O., where it passes the front of her property, is built on an embankment, and in the year 1916 the appellant, Furnace Coal Mining Company, hereinafter called the coal company, constructed a switch from its mines to the main line of the C. & O. connecting with it just a little west of the appellee's home. This switch in front of appellee's property is constructed entirely on the C. & O.'s right of way and between the main line and the appellee's line. It too is built on an embankment some four or six feet in height. In 1917 appellee brought suit against the coal company on account of the insufficient culverts then under this embankment which caused the water to back up over her land in ordinary rains. She secured a small judgment in this case and by the verdict the court required the coal company to put in new and larger culverts under this embankment. It is obvious that the court treated appellee's cause of action in that suit as one of recurring injury and the wrong of the coal company as one that could be remedied at a reasonable expense, since that was what the judgment required to be done. In 1923 appellee brought this suit against the C. & O. and the coal company, alleging that the culverts which the coal company had installed pursuant to the court's order in 1917 were still insufficient and that for the five preceding years and since the judgment in the first case, water had in ordinary rains been caused to back up over her property to her damage. On a trial before the jury she was awarded a verdict of $1,000.00 against both defendants jointly, and from the judgment entered on that verdict both the C. & O. and the coal company bring this appeal.

So far as the C. & O. is concerned, it is insisting that its motion for a peremptory instruction should have been sustained. The evidence shows that the switch in question and the embankment on which it is built were constructed by the coal company, that the C. & O. had nothing to do either with its construction or its subsequent maintenance, and that all the C. & O. had to do with this

switch was to run cars over to it to the coal tipple and back again to the main line. The appellee in her testimony admits that the C. & O. has done nothing to damage her; that the culverts under the main line of the C. & O. are entirely adequate, and that her sole complaint is with reference to this embankment on which the switch is located and to the culverts under it. To relieve itself from liability in this state of case, the C. & O. cites and relies on the case of L. & N. R. R. v. Commonwealth, 31 Ky. L. R. 65, 101 S. W. 382. In that case a man by the name of Asher who owned a coal mine near to the main line of the L. & N. had constructed a switch from this coal mine to the defendant's railroad and had so constructed it as to throw water upon a public road. The switch was constructed entirely on the right of way of the L. & N. The L. & N. was indicted for and convicted of the offense of permitting a public nuisance by throwing water over and across this public road. On appeal to this court the judgment was reversed. We said:

"It is urged upon us, however, that inasmuch as the railroad corporation permitted Asher to build upon and over its right of way the switch, in order to make a physical connection with the defendant's line, it is responsible for the injury complained of. This reasoning would be sound if the Louisville & Nashville Railroad Company had an option as to whether or not the switch was built across its right of way in order to make a physical connection with the railroad tracks. Section 216 of the Constitution is as follows: 'All railway, transfer, belt lines and railway bridge companies shall allow the tracks of each other to unite, intersect and cross at any point where such union, intersection and crossing is reasonable or feasible.' Under this provision the railroad corporation could not prevent Asher building his embankment in order to make a physical connection between his switch and its tracks; and, this being true, it is not responsible for the acts of Asher, which it could neither control or prevent. All of the evidence showed that the injury complained of was done by Asher's embankment, and not by the railroad, and therefore the defendant was entitled to a peremptory instruction to the jury, at the close of the Commonwealth's testimony, requiring them to find it not guilty."

This case is conclusive of the question raised by the C. & O.'s motion for a peremptory. It is almost identical on its facts with the case before us. It results therefore that the lower court erred in not sustaining the motion of the C. & O. for a peremptory.

As to the coal company, however, a different question is presented with reference to its motion for a peremptory instruction. The evidence for the appellee shows that she lived in this property during the period in question as her residence. Her testimony and even that of at least one of the witnesses for the coal company shows that the water was caused to back up in ordinary rains upon her land. Although there is a dispute in the evidence, there is some testimony to show that in backing up over her property there were carried upon it offal and other noisome substances which created quite a smell and was very unpleasant. This testimony was relevant because this case involved only the sufficiency of the culverts and there was no proof to show that if insufficient they could not be enlarged at a reasonable cost. Hence it presented the issue of a wrong done by a temporary structure in which the measure of damages is the diminution of the value of the use of the property involved, in which diminution is such discomfiture as that caused in the manner above indicated. Gay v. Perry, 205 Ky. 38, 265 S. W. 437. There was some proof in the case to go to the jury from which as men of common sense they might have determined in some measure what was the diminution in the value of the use, although it must be admitted that the proof was not entirely satisfactory and indeed rather vague on this score, since it is not shown how often the property was overflowed or how long the overflows lasted or just what was the value of the property and other matters, all of which would have aided the jury materially in determining this question of the diminution of the value of the use and would have enabled this court to have measured the reasonableness of the verdict returned. But at all events there was enough evidence to carry the case to the jury as against the coal company.

However, in giving instruction No. 3 complained of by the coal company on this appeal the lower court committed error. The correct instruction to be given in a case of this character is:

"If you find for the plaintiff you will award her such a sum in damages as you may believe from the

evidence will fairly and reasonably compensate her for the diminution in the value of the use of the property, if any, caused by the overflows shown in the evidence, if any, your verdict in all not to exceed the sum of $2,000.00, the amount claimed in the petition."

See L. H. & St. L. Ry. Co. v. Roberts, 144 Ky. 820; 139 S. W. 1073; City of Louisville v. Hehemann, 161 Ky. 523, 171 S. W. 165; Gay v. Perry, *supra.*

The court, however, instructed the jury as follows:

"If the jury find for the plaintiff you will find for her such a sum in damages as you will fairly compensate her for the diminution of her property as a residence so the sum so found, if anything, does not exceed the sum of $2,000.00, the amount claimed for in the petition."

It will be observed that this instruction is equivocal. It may be read to authorize a verdict based on the difference in the value of appellee's property before and after the embankment was constructed as well as to authorize a verdict based on the diminution of the value of the use. If based on the former alternative the verdict cannot be supported by this record, as such measure of damages was not the true measure in the light of the facts appearing in the evidence. The verdict in this case was for $1,000.00 which, in view of the character of the property and extent of the injury, seems large. It may be that the jury awarded damages based on the diminution in the market value rather than on the diminution in the value of the use, and this is especially probable because the appellee in that part of her testimony dealing with the extent of her damages said: "I could have sold this property for about $5,000.00 to $7,000.00, but now I could not sell it at all;" which evidence the court erroneously allowed to remain in the record over the coal company's objection. It is thus apparent that this instruction did not correctly guide the jury in its deliberations, and for the court's error in giving it, the judgment must be reversed.

The question of the excessiveness of the verdict is not passed upon inasmuch as the evidence on the next trial may be different from that present in this record.

Judgment reversed.