## Judd v. Blakeman, et al.

(Decided May 29, 1917.)

### Appeal from Green Circuit Court.

1. Waters and Water Courses—Obstruction—Deflection—Injunction.— Where plaintiff, in an injunctive action for removal of an obstruction constructed upon defendant's land, which so deflects the current of a stream flowing between as to cause it to overflow the former's land, shows that such obstruction greatly increases the volume and frequency of the overflows, thereby damaging plaintiff's land, injunction will lie to compel the removal of the obstruction, unless upon the facts such relief would be inequitable.

2. Waters and Water Courses—Obstructions.—In this case, testimony introduced by defendant showing that before the construction of the obstruction plaintiff's land had washed to some extent, does not, in the least, combat the proof that the obstruction increases the volume and force of the waters cast thereby upon plaintiff's land.

3. Waters and Water Courses—Limitation of Action.—The judgment in this case only allowing damages for the time plaintiffs had owned the land, which was less than one year, the claim was not barred by the statute of limitation, since a new cause of action accrued for damages done by each overflow, and the statute of limitations only applied to bar a recovery for more than five years before the bringing of the action.

4. Waters and Water Courses—Obstructions—Damages—Estoppel.— Where defendant pleads acquiescence of the former riparian owner to the building of an obstruction which apparently did no damage during the period of the former owner's holding, but which is proved to be now destructive and damaging, as an estoppel against plaintiffs, suing for damages done by and removal of such obstruction; while it is, of course, true that one, by laches, may lose his right to injunctive relief by standing by and seeing the party com-

plained of expending large sums of money in improving his own land which will result in injury to complainant's land, the plea of estoppel will not prevail here because it appears from the evidence and the court's judgment that the cost of removing the obstruction will be small in comparison with the damage that will result to plaintiffs if the obstruction is allowed to remain.

JEFF HENRY for appellant.

NOGGLE & GRAHAM for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In September, 1900, appellant bought a small farm located on the east side of Russell's Creek in Green county, the stream forming the western boundary of his land. At that time the land on the opposite side of the creek belonged to Mrs. Martha Blakeman, who died July 3rd, 1913, devising her land to the appellees, who, on May 28th, 1914, filed this action, alleging, in substance, that appellant had been for years cutting and felling timber on his side of the creek in such a way as to build up the land on his side so as to cause the water of the creek to overflow and wash their land, and that he would continue to so cut and fell the trees upon his own land unless enjoined by the court, and that the embankment already formed would continue to turn the water out of its ordinary channel upon appellee's land unless he was required to remove the artificial obstruction he had thus created. The prayer of the petition asked that the defendant be permanently enjoined from cutting and felling any more trees in the way objected to; for a mandatory injunction requiring him to remove the obstruction theretofore constructed, and for damages done.

The answer traversed the allegations of the petition; in a second paragraph pleaded the statute of limitation; and, in a third paragraph, pleaded that appellees were not the owners of the land before July, 1913, but that until that date same was owned by, and in the possession of, Mrs. Martha Blakeman. A demurrer was filed by the plaintiffs to the second and third paragraphs of the answer, but same was not acted upon. Much proof was taken upon both sides, and judgment was entered requiring the defendant to remove that portion of the obstruction which, in the judgment of the court, caused the overflow on plaintiff's land, and awarded the plaintiffs a

judgment for $100.00 for the damages they had sustained. From that judgment, the defendant has appealed and asks a reversal upon the ground that the evidence fails to show that he was threatening to continue the construction of the obstruction upon his land, and shows that he had done nothing to create an obstruction to the natural flow of the water since appellees acquired possession and title to their land; that the obstruction was completed while Mrs. Blakeman owned the land and that she had not objected thereto. It is also insisted that upon the question of whether or not the obstruction that appellant had built prior to the time appellees acquired their lands caused the water to overflow and wash their land, the great preponderance of the evidence proved that it did not do so.

(1) While it is true that appellees did allege that unless enjoined the appellant would continue to build up the land upon his side of the creek and the evidence fails to show that appellant had done or threatened to do anything to further increase the size of the embankment he had caused to form upon his side of the creek, since appellees acquired title to the land, it is nevertheless a fact that the evidence does very satisfactorily show that as a result of the embankment constructed by appellant before appellees acquired title to their land the waters of the creek in every freshet and high tide are by that embankment forced against and over the lands of appellees in greater volume and more frequently than they were used to flow before the embankment was erected, to obviate which was equally the object of the petition, as well as to prevent the augmentation of the embankment by further acts of appellant, and having established the fact that the embankment already erected caused recurrent and damaging overflows of their land, entitled appellees to a mandatory injunction to remove the obstruction already erected, which was causing and would continue to cause innumerable trespasses upon their land, and the injunction granted by the court was directed only to the removal of the permanent obstruction which the evidence shows was causing and would continue to cause constantly recurring overflows of appellees' land, but no injunction was granted upon the alleged but unproven threatened acts. Consequently, the fact that appellees did not prove their allegation that appellant, unless enjoined, would build the embankment higher, did

not affect the judgment rendered and can offer no reason for its reversal.

(2) If the evidence proved, as we have stated, that the embankment appellant had erected upon his land before appellees acquired their land was causing, with each freshet in the stream, a new overflow of appellees' land, which would not have occurred except for the embankment, or was causing an overflow of greater force or greater volume than otherwise would have occurred, then appellees were entitled to have the obstruction removed. Appellant not only combats this proposition but insists that the evidence does not prove that the embankment he admits having constructed, increased either the volume or force of the overflows of appellees' land. We will first examine the evidence to see whether or not it was proven that this obstruction did increase the volume and force of the waters thrown upon and against appellees' land. When appellant acquired his land in 1900 there was upon his side of, and adjoining the creek, a low sandbar about two hundred yards long by fifty yards wide, upon which was growing some small bushes. In the next year, 1901, he had these bushes and small trees so cut, about waist high, that the tops would fall to the ground but not be severed from their trunks. This caused drift and debris to be caught and held upon the sandbar, raising its elevation. At intervals thereafter he repeated the process with the result that this sandbar, containing about one and two-fifths acres, was materially raised till, in fact, it became higher than appellees' adjacent bottom land, the result of which was necessarily to throw so much of the water of the stream, as had formerly in flood stages passed over the sandbar, upon appellees' bottom land; and the evidence further shows that since appellant had raised the level of his land the water of the stream was undermining the banks upon appellees' side, and causing a drain to be washed across appellees' land. The mere fact that appellant was enabled to prove by some of his witnesses that prior to his building the embankment on his side of the stream, appellees' bottom land had at times washed to some extent, does not at all combat the proof that the embankment had caused an increase in the volume and force of the waters cast thereby upon appellees' land. To raise the land upon one side of the stream within the overflow basin cannot help but increase the flow upon the other side, and it cannot be

denied that appellant's action has not only increased the volume of water passing over appellees' land in every time of high water prior to the filing of the suit, but that it will continue to do so as long as the embankment remains. Each recurrent flood will bring with it a new trespass, to prevent which it was the duty and within the power of the chancellor to prevent by mandatory injunction, otherwise appellees would be without an adequate remedy. A multiplicity of suits would result and it would be absolutely impossible in any one suit to determine the full value of the damage that would result from such an obstruction. There was no such permanency to, or necessity for, the embankment that appellant had built upon his land as would render it inequitable to order its removal. It is simply a question of whether appellees should be permitted to enjoy their land in its natural state or whether they should be deprived of this right in order that appellant might enjoy his lands in an artificial condition. Under such state of case authorities are abundant and unanimous that no adequate remedy exists at law and that equity will extend the remedy by injunction. Some of the authorities sustaining this position are: M. H. &. E. R. R. Co. v. Graham, 147 Ky. 604; 40 Cyc. 572; 13 Am. & Eng. Enc., second edition, p. 688; Norton v. Oregon Short Line R. R. Co., 7 L. R. A. (N. S.) 344; Ft. Worth Improv. Dist. v. City of Ft. Worth, 48 L. R. A. (N. S.) 998; Jefferson v. Hicks, 24 L. R. A. (N. S.) 219; 2 Farnham on Waters, p. 1565.

The statute of limitation is not available, since a new cause of action accrues for damage done by each overflow, except to bar a recovery for more than five years before the bringing of the action. Ill. Cent. R. R. Co. v. Taylor, 89 S. W. 121; Crabtree Coal Mining Co. v. Hamby's Admr., 90 S. W. 226; New Jellico Coal Co. v. Trosper, 165 Ky. 417. The judgment here only allowed damages for the time appellees had owned the land, which was less than one year before the filing of the suit, so the claim for damages was not barred.

Appellant insists that because Mrs. Blakeman did not, during the time she owned the land, object to the construction of the embankment by the appellant and since it was completed during that time, that appellees are estopped, even though no estoppel was pleaded, by her acquiescence. In support of which he cites High on

Injunctions, section 7, and Bryon v. L. & N. R. R. Co., 22 Rep. 1007. While it is, of course, true that one, by laches, may lose his right to injunctive relief by standing by without objection and seeing the party complained of expending large sums of money in a permanent improvement upon his own land which will result in injury to his land, we do not think this rule is applicable to the facts here because it is shown both by the facts proven and by the judgment rendered by the court that the obstruction can be removed easily by defendant at very little cost in comparison with the damage that will result to the appellees if the obstruction is allowed to remain. All that the court found to be necessary to be done by the appellant to remove the obstruction, which he clearly had no right to make, is that he is to cut and remove from a part of the embankment that he has built up, the bushes and small trees so that the stream may remove the accumulated dirt and debris. The principle invoked is usually applied, and in fact is applicable only when it would be inequitable to grant injunctive relief, as where the complainant has failed to object promptly to the construction of a permanent improvement and the expenses of its removal would be greater than the loss sustained by complainant from allowing it to remain, although the matter of expense is not always controlling. This was the basis for its application in the case of Byron v. L. & N. R. R. Co., *supra,* and we can conceive of no reasons for its application under such circumstances as obtain here. For aught that appears in the evidence, no damage may have resulted from the embankment to the lands now owned by appellees during the lifetime of Mrs. Blakeman, but whether that is true or not in view of the fact that it seems probable from the evidence that appellees will be deprived of their property, a valuable piece of bottom land, if the obstruction is allowed to remain, which can be prevented, easily and at slight cost to appellant, by requiring him to remove the obstruction in the method ordered, we feel sure the rule ought not to be applied to this case.

For the reasons indicated, the judgment is affirmed.