## Wharton, County Road Supervisor, et al. v. Barber.

(Decided May 7, 1920.)

### Appeal from Washington Circuit Court.

1. Highways—County Road Engineer—Constitutional Law.—Sections 4352 and 4353 of the statutes held unconstitutional insofar as they attempt to confer upon the county road engineer authority to take or injure property of private individuals, even when necessary for the proper maintenance and protection of public roads without theretofore having paid or secured just compensation therefor.

2. Waters and Water Courses—Highways—County Road Engineer.—Where a county road engineer placed an iron pipe under the pike

and diverted water from its natural course on to and injuring plaintiff's property without first having paid or secured plaintiff for such injury or destruction, as required by section 242 of the Constitution, the court did not err in requiring the county road engineer and the fiscal court to remove said pipe.

3. Waters and Water Courses—County Road Engineer—Pleading.— The allegations of the petition being sufficiently controverted to put in issue the question of negligence, held, that the court did not err upon a submission upon the pleadings alone, in refusing to enjoin the fiscal court and road engineer from permitting water to escape over the turnike on to plaintiff's land at other points than that where a new culvert was constructed.

JOSEPH POLIN for appellants.

J. H. McCHORD for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The Springfield and Bardstown turnpike just after crossing Cartwright creek in Washington county, gradually ascends a hill by traversing the side thereof for some fifteen hundred feet. Appellee, Barber, who was plaintiff below, owns the land on the lower side of the road, which was built about eighty years ago. As originally constructed and until recently the water from the land above the road was carried in a ditch along the upper side of the road from the top to the bottom of the hill where it was discharged through a stone culvert, two by three feet, on to plaintiff's land. There was no culvert or opening under or across the pike at any other place on the hillside.

Some time before the institution of this action water had broken across the turnpike a short distance above the stone culvert and cut a ditch in plaintiff's land. Thereafter the defendants, who are the county road supervisor and members of the fiscal court of Washington county, and whose duty it is to maintain and repair this and other county roads, caused an eighteen inch, corrugated, metal pipe to be placed under the pike about two hundred feet above the stone culvert and through which water was discharged upon the lands of plaintiff and cut a ditch therein. In his petition the plaintiff alleged he had suffered and would continue to suffer great, irreparable and constantly recurring injury as a result of the defendants placing the iron pipe under the pike and discharging water upon his lands at that point, and

also by reason of their permitting the water to flow across the pike on to his lands, alleged to have been caused by the negligence of the defendants in failing to keep the ditch along the upper side of the road clear of obstructions and in proper repair.

Defendants' demurrer to the petition was overruled and they answered traversing the allegations of negligence and alleging that the ditch that had theretofore been maintained on the upper side of the road from the top to the bottom of the hill was inadequate for the purpose and that it was impracticable to make it so; that in order to properly maintain and keep the road in repair it had become necessary to place the culvert complained of under the pike and that it would be necessary to place another similar or larger culvert thereunder at a point farther up the hill; that this necessity arose from the fact that the lands above the pike, which had formerly been in woods, had been cleared, which caused the water from the ten and one-half acres drained into the ditch above the pike to reach the ditch more quickly and in greater volume than formerly; that the defendants were "vested with a discretion in the matter of placing ditches or drains across and under turnpike roads of the county; that the discretion in this case was reasonably exercised for the sole purpose of protecting and maintaining the turnpike; that plaintiff accepted title to his land with notice of the conditions herein set out and with notice of the fact that the turnpike company had legally acquired the right of way together with the rights, privileges and appurtenances essential to the use and enjoyment of the right of way for the purpose for which it was intended, and that proper drainage is essential to the use, enjoyment and maintenance of said road."

A demurrer was sustained to the answer and upon defendants declining to plead further a mandatory injunction was issued against them compelling them to remove the corrugated metal pipe which they had placed under the pike about two hundred feet above the stone culvert but declining to enjoin them from permitting water to flow across the pike on to plaintiff's land at other points. From so much of the judgment as required them to remove the metal pipe, which they had placed under the pike, defendants have appealed, and plaintiff has prosecuted a cross-appeal from so much of the judgment as refused to enjoin the defendants

from permitting water to flow across the pike at other points along the hillside upon his land.

It is the contention of the defendants that being charged by statute with the duty and obligation of maintaining and keeping in repair the public roads of the county they have the power, in the exercise of a reasonable discretion, to make such ditches and drains along and across the public roads of the county as are necessary to properly maintain and keep in repair such roads, and that the court erred in sustaining a demurrer to their answer pleading the necessity for the construction of the culvert complained of, and that same was a reasonable exercise of the discretion vested in them. In support of this contention we are referred to sections 4352 and 4353 of the statutes, which are as follows:

"Sec. 4352. The county road engineer may enter upon any of the lands adjacent to any of the public roads of his county for the purpose of opening any existing ditch or drain, or for digging a new ditch or drain for the free passage of water for the drainage of such public roads; upon the lands of any persons adjoining rivers, streams or creeks, to drive piles, throw up embankments, or to perform any other labor necessary to keep such rivers, streams or creeks within their proper channels, and to prevent their encroachment upon public roads or abutments of bridges. He may also enter upon the lands adjoining the public road, which during the spring freshets or at the time of high water are subject to overflow from such rivers, streams or creeks, to remove or change the position of the fence or other obstructions, preventing the free flow of water under or through a bridge or culvert whenever the same may be necessary for the protection of the public road or bridge.

"Sec. 4353. When lands are entered upon under the provisions of the preceding section, the county road engineer may agree with the owner of such lands subject to the approval of the fiscal court as to the amount of damages, if any, sustained by the owner in consequence of such entry in the performance of such work authorized by such section, and the amount of such damages shall be a charge to be paid by the county court out of the road funds in the county treasury. If the county road engineer is unable to agree with the owner upon the amount of such damages thus sustained, the amount thereof shall be ascertained, determined and paid in the

manner that damages are so ascertained, determined and paid where new public roads are laid out and opened, and the fiscal court of the county and the landowners are unable to agree upon the amount thereof.''

Assuming that the defendant, Wharton, is the county road engineer of Washington county, although he is designated in the pleadings as the county road supervisor, since the title of the officer in charge of the roads of the county has recently been changed from that of supervisor to engineer, and conceding that the legislature by section 4352 attempted to confer upon that officer the power to construct such ditches and drains as were necessary to protect a public road and by section 4353 to prescribe the remedy for a landowner for any damage sustained thereby, we are nevertheless of the opinion that the legislature did not have the power, because of section 242 of our Constitution, to so limit the rights of the landowner. The rule that has long been recognized in this state is thus stated in 40 Cyc. 646:

''An upper owner has no right to increase materially the volume of water discharged upon the lower estate, nor cast upon the lower land water which would not have reached it if the natural drainage conditions had not been disturbed, or divert water from the courses it would naturally have followed and discharge it through artificial channels or cause it to discharge upon the lower estate at a point which would not have been its natural destination.''

See Pickerill v. City of Louisville, 125 Ky. 213, 100 S. W. 873; Bonte v. Postel, 109 Ky. 64, 58 S. W. 536; Madisonville H. & E. R. Co. v. Cates, 138 Ky. 257, 127 S. W. 988; Stith v. L. & N. R. Co., 109 Ky. 168, 58 S. W. 600; C. & O. R. R. Co. v. Blankenship, 158 Ky. 270, 164 S. W. 943; Grinstead v. Sanders, 22 R. 51, 56 S. W. 665; Judd v. Blakeman, 175 Ky. 848, 195 S. W. 119; Franz v. Jacobs, 183 Ky. 647, 210 S. W. 163. See also Gould on Waters, section 271.

That the defendants, by placing the iron pipe under the pike at a point some thirteen hundred feet from the top of the hill so as to discharge at that place upon the lands of the plaintiff waters that had been accumulated in the ditch on the upper side of the pike from the top of the hill to that point, were interfering with the natural flow of the water upon the lands of plaintiff is apparent beyond dispute, and that to do so will in the

future result in constantly recurring trespasses upon and damages to plaintiff's land cannot be denied or doubted. Under like circumstances plaintiff's right to damages and injunctive relief against private individuals and corporations is clear under all the authorities. Judd v. Blakeman, *supra,* 40 Cyc. 656; High on Injunctions, section 714; Grinstead v. Sanders, *supra;* Smith v. Wathen, 156 Ky. 820, 162 S. W. 88.

It is manifest that defendants, as county officials, could not have larger powers than the county, and this court many times has decided that a county has no right to do anything that is not expressly authorized by statute. Bushart v. Fulton County, 183 Ky. 471, 209 S. W. 499; Breathitt County v. Hammond, 150 Ky. 502, 150 S. W. 661; McDonald v. Franklin County, 125 Ky. 205, 100 S. W. 861. See also 15 C. J. 419. ,

Except by condemnation proceedings the county is given no authority by statute other than 4352 to take or injure the property of an individual for public purposes. Hence the defendants have no right or authority as county officers to take or injure plaintiff's land even in the necessary protection of county roads unless that authority was validly conferred upon the county road engineer by section 4352 of the statute, *supra.* Section 242 of the Constitution reads:

"Municipal and other corporations, and individuals invested with the privileges of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction. The general assembly shall not deprive any person of an appeal from any preliminary assessment of damages against any such corporation or individual, made by commissioners or otherwise; and upon appeal from such preliminary assessment, the amount of such damages shall, in all cases, be determined by a jury, according to the course of the common law."

In Layman v. Beeler, 113 Ky. 221, 67 S. W. 995, the county authorities determined that the proper maintenance of an established road required a grade to be reduced and additional ditches to be constructed on the right of way, which the plaintiff alleged injured his prop-

erty and he sought to recover damages therefor. The recovery, was allowed, the court saying:

"The matter of opening public roads, their improvement and repair are exclusively within the jurisdiction of the fiscal court of the county. This tribunal is authorized to institute condemnation proceedings to take such lands and material as may be necessary for the purpose of construction of the public highways. This right to eminent domain, however, is, and under our Constitution must be, subordinate to the right of the citizen to be first reimbursed for his damages occasioned by the taking. This means, not only that he shall be paid the value of the thing taken, but that he shall be paid the damages done to the adjacent property by the taking and manner of use of the citizen's lands for the public.

"The provision of the Constitution which requires that the municipality taking private property for public use 'shall make just compensation for the property taken, injured or destroyed by them,' necessarily implies that, if the corporation should fail to make the compensation before the taking or injuring, it is liable therefor after such taking or injury, and that, if it will not pay the damages, an action is necessarily authorized to be instituted against it; for it would be idle to give to a party a right without a remedy to enforce it. We therefore conclude that, if the facts as alleged in the petition be true—that is, that the improvement of the highway in question did so impair the plaintiff's adjacent lands and their value as to damage him—that was a taking and injury within the contemplation and meaning of the Constitution."

To the same effect is the more recent case of Moore v. Lawrence County, 143 Ky. 448, 136 S. W. 1031, where the facts were almost identical with those of the present case.

In both of those cases the right of a private individual to sue the county and county officials for damages to his land was put upon the ground that the injury was within the meaning of section 242 of the Constitution, the effect of which was to place counties and their officials in the same position as individuals and private and municipal corporations with reference to their liability to suit, either legal or equitable, by a private individual for the invasion of any right guaranteed by that section of the Constitution.

It will be noticed too that the section of the Constitution treats the injury and taking of private property for public purposes in the same way and guarantees that neither shall be done unless just compensation shall have been paid before such taking or paid and secured before such injury or destruction.

It is therefore apparent that the legislature did not have the power to confer upon the road engineer the authority to take or injure private property for public purposes without theretofore having paid or secured in the way provided by law the damages that would result therefrom. The way provided by law is by condemnation proceedings under the right of eminent domain, and so far as sections 4352 and 4353 of the statutes attempt to confer upon the county road engineer the authority to take or injure the property of a private individual, even when necessary for the proper maintenance and protection of public roads, without theretofore having paid or secured just compensation therefor, they are unconstitutional.

It therefore results that the chancellor did not err in overruling defendants' demurrer to the petition or in sustaining plaintiff's demurrer to that part of the answer attempting to justify the construction of the new culvert and requiring the defendants to remove the corrugated metal pipe they had placed under the pike and which discharged the water collected in the ditch along the upper side of the pike at one place upon plaintiff's land. This doubtless would not be true, however, had it been made to appear affirmatively that the damage complained of herein had been in contemplation and taken into consideration in estimating damages to the land now owned by plaintiff when the right of way for the road was originally acquired, whether by condemnation proceedings or agreement, but that fact does not appear from the record here and we can not assume it as counsel for appellants would have us do from the mere fact of possession of the right of way, as some courts have done, since this would be in direct conflict with the position already taken upon the question by this court in Layman v. Beeler and Moore v. Lawrence County, *supra.*

2. While many of the denials of the answer are qualified or are negative pregnants, the allegations of the petition charging negligence upon the part of the defendants in the maintenance of the ditch upon the upper side

of the road, as a consequence of which it is alleged the water breaks over same and on to plaintiff's land, are in our judgment controverted sufficiently to put in issue the question of negligence as the cause therefor, and the court did not therefore, upon a submission upon the pleadings, alone, err in refusing to enjoin the defendants from permitting water to escape over the turnpike on to plaintiff's land at other points than the place where the new culvert was constructed, although the demurrer should not have been sustained to the answer as a whole. This error was harmless to appellant, however, and appellees cannot complain thereof.

Wherefore the judgment is affirmed upon both the original and cross-appeals.