## Webster County v. Lutz.

### Same v. Wise.

### Same v. Vaughan.

(Decided June 3, 1930.)

J. M. RAYBURN for appellant.

C. W. BENNETT and C. J. WADDILL for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

There are only two questions presented by these three appeals, which were heard together in the lower court. The cases were tried twice. On the first trial there was a judgment in each case for Webster county, and on the second trial there was a judgment in favor of each appellee for $500. One of the questions is the propriety of the ruling of the trial court on demurrers, and the other is whether the motion to substitute the judgments on the first trial for the judgments on the second trial should have been sustained.

A demurrer was filed to the petition, and counsel for the county insists that it should have been sustained for three reasons. One is that it did not allege that the claims had been presented to the fiscal court for payment before the actions were instituted. He cites and relies on the case of Hudgins v. Carter County, 115 Ky. 133, 72 S. W. 730, 24 Ky. Law Rep. 1980. That was an action by the county health officer to recover compensation above that which was allowed him by the fiscal court. This court in its opinion pointed out that by the provisions of section 2060, Ky. Stats., the health officer for the county was to be paid as other county officers. The salary had to be fixed by the fiscal court. In such a case it was certainly necessary that he present his claim to the fiscal court before he would have any authority to proceed against the county. The case is not in point. The actions before us are to recover for the taking of private property for a public purpose growing out of the tortious act of the county in the running of sewage upon or near the property of appellees which reduced the value of the use of the property.

The second ground of demurrer was that the petition did not allege that the fiscal court, by any order,

directed the building of the toilets, or that the court had ratified their building and maintenance. Counsel relies on the case of Arnold v. City of Stanford, 113 Ky. 852, 69 S. W. 726, 24 Ky. Law Rep. 626. That was a pesthouse case in a city of the fifth class. The petition did not allege that the city council adopted an ordinance or resolution directing the erection and maintenance of the pesthouse, or that it had ratified such act on the part of the city. It was held that there was no legislative authority for a city of the fifth class to erect pesthouses for the treatment of eruptive diseases, and the basis of the denial of a right of recovery was that a city is not liable for injury to property resulting from its failure to enact ordinances for the prevention of a nuisance, as the failure of a city to discharge its political duties does not render it liable.

In the petition before us it is alleged that Webster county owns, controls, and manages a lot of ground in Dixon, Ky., on which the courthouse, public buildings, and public toilets are erected. The erection and maintenance of public toilets is admitted by the answer. The second ground urged against the petition is not, therefore, tenable.

The third ground relied on by appellant in its attack on the petitions is that it is not alleged that the acts complained of were not in the performance of a governmental function. Undoubtedly it is the general rule that a county is an arm of the state government and cannot be sued for its torts without its consent. But section 242 of the Constitution is controlling in these and similar cases. Private property may not be taken for a public use without the making of just compensation to the owner. The taking of property under that provision of the Constitution does not always mean the actual taking by the process of obtaining the physical possession of the property. When the use of property is interfered with to the prejudice of the owner and there is a diminution of the value of the use of the property, that is a taking within the meaning of the Constitution.

The case of Herr et al. v. Central Kentucky Lunatic Asylum, 97 Ky. 458, 30 S. W. 971, 972, 17 Ky. Law Rep. 320, 28 L. R. A. 394, 53 Am. St. Rep. 414, decided soon after the adoption of the present Constitution of Kentucky, is cited and relied on by counsel for appellees as supporting their contention that they may maintain an

action for the taking of property against a county under the provisions of section 242 of the Constitution without an enabling act by the General Assembly as is required by the provisions of section 231 of the Constitution before a suit may be instituted against the state. That case, however, went no further than to hold that, while an action against an officer, but really against the state to enforce performance of its obligation in its political capacity, cannot be maintained, yet officers or agents holding and controlling property of the state may be enjoined from so using such property as to create a nuisance whereby the health or property of others may be injured. In that action it was alleged that the Central Kentucky Lunatic Asylum had built two dams across a creek which flowed through the land which it held for the use of the commonwealth, and that the erection of the dams had resulted in a nuisance which was calculated to injure the health and property of the complaining parties. The suit sought an abatement of the nuisance, and this court adjudged that the complaining parties were entitled to the relief sought on the ground that the act creating the Central Kenucky Lunatic Asylum by express terms allowed it to be sued. The conclusion was not reached, however, upon the ground that the state was suable, but rather on the ground that agents or officers of the state acting for it under certain circumstances could be controlled by the injunctive processes of courts. In referring to the case of Osborn v. Bank of United States, 9 Wheat. 738, 6 L. Ed. 204, the court said: "The doctrine there stated has in numerous cases been since approved and applied by the supreme court, and this court has never held differently. For exemption of the state from suit without its consent was intended for its own protection, not at all to enable agents or officers to do with impunity, injury to private rights."

In the case of Hauns v. Central Kentucky Lunatic Asylum, 103 Ky. 562, 45 S. W. 890, 20 Ky. Law Rep. 246, it was held by the court that the mere fact that the processes of law may interfere with some of the functions of the state government is no reason why their enforcement cannot be had, and that the property of a corporation performing a function of government in Kentucky for insane persons may be sold under execution if the sale of the property would not render the institution totally unable to properly care for inmates. The facts in that case were that the Central Kentucky Lunatic

Asylum had wrongfully constructed and maintained upon its premises two dams across Goose creek which formed two separate artificial lakes on the premises of Hauns, and that by reason of these dams and the artificial lakes a nuisance had resulted to the great damage of Hauns. He sued the institution and obtained a judgment for $5,000, upon which execution issued and was levied on certain property belonging to the asylum. It was contended in that case by the asylumn that it was but an agency or arm of the state, and that the property levied on was the property of the state devoted to the care and maintenance of the patients in the asylum, and for that reason the property was not subject to levy and sale. It was the contention of Hauns that the asylum was a corporation created by the laws of the state and authorized to sue and to be sued, and that as such a corporation it had, in effect, converted his farm to its own use, or, what was practically the same thing, had damaged it to the extent of $5,000 for the benefit of the institution. The court pointed out the origin and history of the Central Kentucky Lunatic Asylum, showing that its predecessor was created by an act of the General Assembly in 1869 which authorized the government to appoint six commissioners to select a suitable site on which the buildings of the institution should be located. The original act was amended from time to time until the institution became the Central Kentucky Asylum for the Insane. The court recited the provisions of the act as it then existed, and concluded that the Legislature had conferred upon the institution the authority to sue and to be sued, and for that reason it could be made to respond in damages resulting to private property owners from a nuisance unlawfully created by it, and that the property belonging to the institution might be sold to satisfy the judgment unless the property was necesary to the proper maintenance and operation of the institution.

The case of Herr v. Central Kentucky Asylum, 110 Ky. 282, 61 S. W. 283, 22 Ky. Law Rep. 1722, is another one of the ''Goose Creek'' cases, of which there were several between the property owners in the vicinity and the Central Kentucky State Asylum. It was again held in the last-cited case that the asylum as a corporation could be made to respond in damages for the creation of a tort with resulting damage to property owners. All of the ''Goose Creek'' cases are based upon the expressed opinion of the court that, when the General Assembly created

the corporation with authority to sue and be sued, it was sufficient to authorize the maintenance of actions against the corporation so created, and the collection of judgments obtained by sale of the property belonging to the institution if the sale would not deprive the institution of property necessary for its operation. It follows, therefore, that the "Goose Creek" cases are not authority for the institution of an action against a county for its tort unless by analogous reasoning the court may reach the conclusion that the county is a quasi corporation created by act of the General Assembly with authority to sue and to be sued. We will advert to that later. We deem is unnecessary to discuss the opinions wherein it has been held that cities may be sued for their torts because by the same process of reasoning as employed in the "Goose Creek" cases the conclusion can be arrived at that a city may be made to respond in damages, as it is the creature of legislative enactment.

The case of Norwood v. Kentucky Confederate Home, 172 Ky. 300, 189 S. W. 225, held that a public charitable institution, not authorized to sue or be sued or to hold or acquire property, but whose property is vested in the state, is not subject to suit by an adjoining landowner for injury to his land occasioned by the construction of a sewer, since such a suit is, in effect, a suit against the state itself. The opinion in that case distinguishes it from the "Goose Creek" cases and opinions in suits against municipalities. The opinion recognized that public agents, whether styled a body corporate or constituting a board with certain powers and duties, might be sued by a private citizen to restrain the commission of some wrong or to compel the performance of some duty enjoined by law, and that municipalities and even public eleemosynary institutions empowered to acquire and hold property and to sue and be sued may, under certain circumstances, be liable in damages for a nuisance resulting in injury to private property. But the court said that the doctrine should not be so extended as to apply to a public eleemosynary institution not authorized to hold property, to sue or to be sued, or to perform any of the functions of an ordinary corporation. It was said that the necessary effect of allowing suit to be instituted against such public eleemosynary institutions would be to hold that the state itself may be sued without its consent and its property subjected to a claim for damages for a nuisance created by its agent.

The case of Moore v. Lawrence County, 143 Ky. 448, 136 S. W. 1031, approaches very closely the question we have before us. The county of Lawrence established and maintained a public road, and made a ditch on the upper side of the road for a distance of several hundred feet. This ditch caught and diverted the water that flowed down the hillside and carried it to a point in front of the premises of the appellant. At that point the county had constructed and maintained a culvert which carried the water under the roadbed to the lower side of the road and there discharged it on the lot of appellant. The discharge of the water on the lot was an additional burden and flow of water and made the property of appellant less desirable as a residence and diminished its value. Suit was instituted by the appellant in which it was alleged that the improvements complained of were made under the supervision and direction of the supervisor of roads and bridges of Lawrence county who acted under the orders of the fiscal court of that county. It was further alleged that appellant had never in any way received any compensation for the injury to his land. One of the defenses interposed by the county was that it was an arm of the state government and not suable. But the court held that under the authority of section 242 of the Constitution and the opinion in the case of Layman v. Beeler et al., 113 Ky. 221, 67 S. W. 995, 24 Ky. Law Rep. 174, the county could be sued and made to respond in damages.

In the case of McDonald v. Powell County, 199 Ky. 300, 250 S. W. 1007, the court held that a landowner might recover the value of land taken by the county without condemnation proceedings for use as a public highway. That opinion followed the case of Layman v. Beeler, supra, and Moore v. Lawrence County, supra.

The case of Letcher County v. Hogg, 209 Ky. 182, 272 S. W. 423, followed the cases cited above, and added the case of Wharton v. Barber, 188 Ky. 57, 221 S. W. 499.

In the case of Black Mountain Corporation v. Houston, 211 Ky. 621, 277 S. W. 993, it was held that a county constructing a turnpike with a culvert too small to carry off the water, by reason of which adjoining land was damaged, was liable therefor under the provisions of section 242 of the Constitution, and that the contractor employed by a county to construct the turnpike was also liable for the taking of the land, but that he was not lia-

ble for the flooding of the land after his contract terminated.

In the case of Harlan County et al. v. Cole, 218 Ky. 819, 292 S. W. 501, it was held that the owner whose property was taken by a county without compensation for public use could recover value of property so appropriated in an action against the county under the provisions of section 242 of the Constitution, but he could not recover against the county far trespass in appropriating his property for road purposes. His sole remedy was held to be the institution of a suit for value of property appropriated. This character of cases must not be confused with cases which have been attempted against counties of which Taylor v. Westerfield, 233 Ky. 619, 26 S. W. (2d) 557, is illustrative, where it was sought to recover damages on a cause of action not covered by section 242 of the Constitution. The very basis of such an action is that private property may not be taken for a public use under the provisions of that section of the Constitution without making just compensation to the owner. When the tortious act of the county results in the creation of a nuisance which has the effect of reducing the value of the use of property, it is the taking of property within the meaning of that constitutional provision and for that reason only may the county be held liable in damages.

What has been said disposes of another ground relied on for reversal, and that is that the court erred in sustaining the demurrer to the second paragraph of the answer, which was, in effect, a plea of the nonsuability of the county because it is an arm of the state government.

The only other question is whether the motion to substitute the judgments entered as a result of the first trial for the judgments entered on the verdict of the jury in the last trial should have been sustained. The court has a wide discretion in granting new trials, and that discretion will not be interfered with by this court unless a manifest injustice has been done one of the parties. Strode, Executrix, v. Strode, 194 Ky. 665, 240 S. W. 368, 27 A. L. R. 313. One of the grounds for a new trial after the verdict of the jury at the first trial was that the attorney representing the county made an improper argument to the jury. It was near the border line of what is proper or improper, and for that reason we cannot hold that the trial judge abused a sound discretion in granting a new

trial. It appears to us also that he granted a new trial on the ground that the verdict was flagrantly against the weight of the evidence. It is urged by counsel for appellees that the question of whether the trial court erred in granting the new trial is not properly before us, but we are waiving that point, as the result would be the same if it should be treated as properly made.

Judgment affirmed.