BYRAM, et al, Appellants, v. LAWEIN, Respondent.

(232 N. W. 907.)

(File No. 6644. Opinion filed November 10, 1930.)

*Hepperle & Fuller,* of Aberdeen, for Appellants.

*Morrison & Skaug,* of Mobridge, for Respondent.

BROWN, P. J. Plaintiffs bring this action to enjoin defendant from maintaining a septic tank in the neighborhood of defendant's station at McIntosh and discharging the overflow water therefrom on defendant's land. There is no sewer system in the town of McIntosh, and defendant maintains a hotel, pool hall, and barber shop upon his premises, and the septic tank receives the sewage from this hotel, pool hall, and a barber shop. From a judgment denying the injunction and an order denying a new trial, plaintiffs appeal.

Each party produced nine witnesses, and plaintiffs' witnesses were all at the time of the trial, or recently had been, in the employ of either the railway company or an elevator company which had an elevator on the right of way near the station, and their testimony was to the effect that the stench from the tank and overflow at times were "awful," "abhorrent to civilization," "think you could kill humanity with it," "it leaves a bad taste in one's mouth," "fumes unbearable"; these and similar expressions characterize the testimony of most of the witnesses for plaintiff. Although such witnesses had lived in the neighborhood of the tank from the time of its construction in 1920 to the time of the trial in 1926, and one of them had a family of three, and another a family of four children, no witness nor any member of the family of any witness had at any time been sick as a result of the odors. One who testified that the smell was "abhorrent at times" also said, "Have always gotten along fine down there as do my wife and four children." The witnesses for the defendant, who were mostly business men living or having their place of business in the near neighborhood of the station and elevator, testified in substance that there was little or no smell from the septic tank in recent years except when the tank is being cleaned and the scum on top of it is broken. The chief of police, who was there almost daily, said there was no smell to speak of since the septic tank was put in. A drayman

who was at the depot every day gave similar testimony. The contour of the land in the municipal area is such that there is a natural surface drainage towards a culvert under the railway track in the vicinity of the station, and the evidence shows that this culvert was put in for the purpose of carrying the surface drainage under the track; that the overflow from the septic tank was let through this culvert, and that this overflow with all surface drainage coming to the culvert debouched on land south of the tracks; some of this land may be within the railway company's right of way, but the evidence leaves this far from clear. Plaintiffs identified on the trial a plat of the area involved marked Exhibit A, but this plat does not seem to have been offered in evidence, and, in any event, is not in the record brought to this court. A witness for defendant referred to a plat or rough draft which he had made, but there is nothing to show that it was introduced in evidence, and it is not in the record before us. By an amended abstract respondent sets out what he calls defendant's Exhibit 1, being a plat (not shown to have been given in evidence), "showing the territory in the city of McIntosh which drains through the culvert in question," but this plat is utterly useless, as no place referred to in the testimony is designated or marked upon it.

Defendant's septic tank had been in operation more than four years before the action was brought, and this appeal was taken exactly one year after the entry of judgment; that is, on the last day permitted by statute for appeal. In view of the sharp conflict in the evidence and of the leisurely manner in which plaintiffs have pursued the remedy they seek, we cannot say that there is any preponderance of evidence against the finding of the trial court to the effect that the evidence is insufficient to establish the claim that the overflow from the septic tank constitutes a public nuisance, or that it authorizes the granting of an injunction on the ground of offensive odors therefrom. But plaintiffs contend that, apart altogether from the question of offensive odors, they are entitled to an injunction because defendant had no right to discharge water of any character upon plaintiff's land. We think this contention is well founded. While, as we have already said, the evidence in appellants' abstract is vague and indefinite as to whether the overflow from the septic tank after passing through the culvert is

discharged upon plaintiff's right of way, yet such an inference may be drawn from the testimony, and is in fact conceded in respondent's brief, where he says that the most that plaintiffs have proved is that a slight quantity of water overflowed from the septic tank and mingled with surface waters passing through the culvert on the plaintiffs' land. Respondent further concedes that finding of fact No. 5 is to the effect that the overflow of water from defendant's septic tank drained onto plaintiffs' land. But it is contended by respondent that this does not entitle Plaintiffs to an injunction, because in the first place the case was prosecuted on the theory that sewage produced such an odor that a public nuisance existed, and, having failed to establish this, plaintiffs now seek to maintain the right to an injunction upon a different theory, namely, that the casting of water on plaintiffs' right of way, although devoid of any offensive odors, is in itself a trespass which should be enjoined, and, in the second place, that the natural surface water passing through the culvert and onto plaintiffs' right of way is augmented in such an insignificant degree by the water coming from defendant's septic tank that the casting of the water from the septic tank on plaintiffs' right of way could not constitute any injury that would be worth mentioning.

While it may be said that the offensive odors and consequently unsanitary condition of the surroundings in the neighborhood of plaintiff's railway station is the thing chiefly stressed in the complaint, yet the complaint alleges as a ground for the action the fact that defendant caused the contents of the septic tank to be discharged on plaintiff's property, and alleges that plaintiffs have demanded of defendant "that he cease to waste such sewage upon plaintiffs' property, and the prayer for relief is that defendant be enjoined from wasting sewage upon plaintiffs' property." The discharge, therefore, of the overflow from the septic tank, whether it is called "sewage" or simply water, is the ultimate grievance alleged in the complaint, and it cannot be said to be any change in the theory of the case if plaintiffs, having failed to establish a nuisance arising from offensive odors, nevertheless insist that they are entitled to an injunction to prevent defendant from casting on their land water in a greater quantity than the natural surface drainage would otherwise bring upon such property: As to the contention that the natural surface water draining through

the culvert is augmented to such a slight degree by the waters from the septic tank that the injuries to plaintiff would not be worth mentioning, it is sufficient to say that defendant has no right to drain any water other than the natural surface water on the plaintiffs' right of way. How far the additional water from defendant's septic tank may aggravate and intensify the boggy condition of the ground in the neighborhood of the railway station is a matter into which we do not need to inquire. That it does increase this marshy condition is testified to by witnesses in the case, and the fact that the damage is but trifling does not authorize the refusal of an injunction where the trespass is a continuing one. 40 Cyc. 656. Equity looks chiefly to the nature of the injury inflicted and the fact of its constant repetition or continuation, rather than to the magnitude of the damage resulting. Davis v. Londgreen, 8 Neb. 43; Anderson v. Drake, 24 S. D. 216, 123 N. W. 673, 27 L. R. A. (N. S.) 250; Horstad v. City of Bryant, 50 S. D. 199, 208 N. W. 980.

The judgment and order repealed from are reversed.

POLLEY, SHERWOOD, CAMPBELL, and BURCH, JJ., concur.