## Monroe Mining Company v. Liberty Coal Mining Company.

(Decided June 5, 1931.)

HUBERT MEREDITH for appellant.

EAVES & SANDIDGE for appellee.

Opinion of the Court by Drury, Commissioner—Affirming in part and reversing in part.

The Monroe Mining Company, which we shall call the stripping company, seeks to reverse a judgment

for $2,500 recovered against it by the appellee, which we shall refer to as the mining company. It also complains of this which is contained in the judgment:

"It is further ordered and adjudged by the Court that the defendant, Monroe Mining Company, its agents, servants, representatives, employees and successors in title, be and it now is, and they are, perpetually enjoined from operating or maintaining the strip mines or strip pits referred to in the petition in such way or manner as that the water accumulating or flowing therein can or will flow or be drained into plaintiff's coal mine, and be it further ordered and adjudged by the Court that the said defendant, Monroe Mining Company, be and it now is ordered and directed to forthwith provide the necessary outlets for, or so drain, said strip pits as that the water accumulating and flowing therein will not and cannot flow or be drained into plaintiff's coal mine."

These two companies operated adjoining coal properties. The appellant produced its coal by removing the superincumbent earth by means of a steam shovel and then by similar means taking up the coal thus exposed, a process commonly known as "stripping." The appellee produced its coal by removing the coal from beneath the superincumbent earth in the usual way, a process commonly called "mining." They were working the same seam of coal, the slope of which was toward the north, and as the property of the mining company lay north of the property of the stripping company, water gathering and collecting in the hole or lake made by the stripping operations naturally flowed into the operations of the mining company, and overflowed its tracks, entries, etc. For the resulting damage to it the mining company sued with the result noted. The proof shows that the run-off water from a watershed of about 85 acres, which formerly flowed away over the surface, has by these stripping operations been led into this lake and thence into the goaf of old mining operations on the property the stripping company is working and through such goaf into the goaf of the mining company, and thus onto its roadways, etc. The stripping company has evidence the water afflicting the mining company did not result from its stripping operations, but the weight of the evidence is that it did. Water runs downhill, and when the stripping

company dug away this surface, made this hole or lake, and left it so the run-off from this watershed could flow into the hole it made from which not only the evidence shows that it did—but the common experience of mankind teaches that it would—seek and follow any other means of escape that might be available. While there is some evidence the mining company has always had trouble with water, yet the great weight of the evidence is that its water difficulties came after and resulted from the operations of the stripping company. When that is considered and one looks at this hole or lake, forty or more feet deep, containing in August, 1929, more than three million gallons of water and which it would take more than eight million gallons to fill so that the water would escape over the surface, the conclusion is inescapable that the stripping company is to blame for the mining company's plight. The sum recovered represents about one-fourth of the actual loss of the mining company, but it has asked no cross-appeal.

We are cited to no case, and we have found none, where the facts are identical with the facts here; but the facts in Judd v. Blakeman et al., 175 Ky. 848, 195 S. W. 119, are very similar and in principle are the same.

The stripping company tendered, but was not allowed to file, an amended answer September 21, 1929, in which it alleged the mining company's property had been ordered sold for debt, had been abandoned, etc., and that it would be inequitable to enjoin it from continuing its stripping operations when no advantage could result to the mining company.

The substance of the amendment is that this injunction does the stripping company great harm and can do the mining company no good.

The court should have allowed this amended answer to be filed, should have required plaintiff to plead thereto, and should have heard proof upon such issues as may have been so developed, before enjoining defendant as was done.

The judgment as to the $2,500 for damages is affirmed, and as to the injunction it is reversed for proceedings as indicated.