#28306-aff in pt & rev in pt-JMK
**2018 S.D. 40**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RYAN ZWART and CHARLES ZWART,            Plaintiffs and Appellees,

   v.

TIMOTHY PENNING,                         Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
LAKE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. PARDY
Judge

* * * *

CHRISTOPHER HEALY of
Meierhenry Sargent, LLP
Sioux Falls, South Dakota                Attorneys for plaintiffs
                                         and appellees.


N. BOB PESALL
Flandreau, South Dakota                  Attorney for defendant
                                         and appellant.


* * * *

CONSIDERED ON BRIEFS
ON JANUARY 8, 2018
OPINION FILED **05/16/18**

#28306

KERN, Justice

[¶1.]        Uphill landowners Ryan and Charles Zwart and downhill landowner Timothy Penning agreed to connect their drain-tile systems to allow for improved drainage across their parcels.  The Zwarts agreed to build and maintain an independent tile line that would run across Penning's property if the system became overloaded.  Penning experienced flooding shortly thereafter, and he believed the connection of the Zwarts' drain tile to his system was the cause.  Penning obstructed the connection and later disconnected his drain-tile system from the Zwarts', causing water to pool on the Zwarts' property.  The Zwarts sued, seeking both damages and an order permitting them to reconnect the two systems.  Penning counterclaimed, arguing the Zwarts unlawfully discharged water onto his land.  The circuit court held in the Zwarts' favor, awarding damages and an easement enabling the Zwarts to install an independent tile line underneath Penning's property. Penning appeals.  We affirm in part and reverse in part.

**Facts and Procedural History**

[¶2.]        Penning owns a 146-acre parcel of agricultural property in Moody County.  The Zwarts lease 60.5 acres of agricultural property located upstream and to the north of Penning's.  The Bachelor Creek stream, a tributary of the Big Sioux River, runs across the two parcels in a southeasterly direction.  Moody County identifies Bachelor Creek as a blue-line drainage way, meaning a navigable waterway that an upstream landowner can drain water into without needing to acquire a waiver from downstream landowners.

-1-

[¶3.]          In 2008, Penning installed a drain-tile system, which discharges into Bachelor Creek. Additionally, Penning had an earthen berm constructed in 2008 across an artificial ditch that diverted surface runoff from the Zwarts' parcel toward Penning's surface inlet. In 2010, the Zwarts applied for a county-drainage permit to install a drain-tile system on their land. Prior to installation, the Zwarts obtained a waiver from Penning and his oral permission to connect the two drain-tile systems. The parties agreed that if Penning's land became overwhelmed as a result of the connection, the Zwarts would install their own tile line independent of Penning's underneath Penning's land. In order to connect the two systems, the Zwarts installed their tile deeper than they would have otherwise been required to dig, incurring greater expense.

[¶4.]          In 2011 and 2012, Penning experienced flooding on several acres. Penning believed the interconnection of his drain-tile system with the Zwarts' caused it to overload. Sometime around December 2011, Penning met with the Zwarts and allegedly granted them a waiver to install their own independent tile line underneath Penning's property.[1] In June or July 2012, Penning installed a restrictor plate at the property line to partially block the flow of water from the Zwarts' drain-tile system into Penning's. In 2013, Penning removed the earthen berm. That same year, the Zwarts' discovered and removed the restrictor plate after ponding occurred on their land. The Zwarts then filed a complaint with the Moody County Drainage Board and the Natural Resources Conservation Service.

---

1.      At trial, neither party could produce a dated waiver form, but testimony
        indicated that the parties met and discussed a waiver during this period.

Shortly thereafter, Penning applied for a permit from the Board to modify his drain-tile system and disconnect it from the Zwarts'. On August 20, 2013, after a contested drainage hearing, the Board granted Penning's application. Penning disconnected his system, rendering the Zwarts' drain-tile system ineffective. Penning also revoked his permission to allow the Zwarts to install their own tile across his field.

[¶5.] On August 18, 2014, the Zwarts filed an amended complaint against Penning. The Zwarts alleged Penning unlawfully blocked a natural drainage way and committed trespass by causing water to pond on the Zwarts' land. The Zwarts also pled breach of contract, arguing they had acted in reliance on Penning's agreement by installing tile at a depth that required interconnection with Penning's for it to function properly. The Zwarts sought damages and an order allowing them to reconnect their system to Penning's. On September 10, 2014, Penning counterclaimed alleging unlawful discharge of water and trespass.[2]

[¶6.] On February 16, 2017, the court held a bench trial. In a letter decision issued March 1, 2017, the court determined that Penning violated civil drainage law by obstructing a natural watercourse. Rejecting Penning's counterclaim, the court observed that the Zwarts did not increase the amount of water that would otherwise drain naturally across the Penning's parcel. With respect to trespass, the court held that "[o]ne who erects a dam or barrier preventing or altering the natural discharge

---

2. Penning also alleged conversion, claiming that the Zwarts took bales of hay that Penning had the right to and did harvest from the Exit 109 diamond-shaped meridians on Interstate 29. However, Penning does not appeal from the circuit court's holding that he had no right to the hay under state law, and we do not address the issue.

of water, thereby intentionally causing the water to back up and flood the land of another, constitutes a trespass." In support of this holding, the court cited a Kentucky Supreme Court decision, *Judd v. Blakeman*, 195 S.W. 119 (Ky. 1917). Finding that Penning intentionally installed such a barrier, the court held that Penning committed a trespass. Conversely, with respect to Penning's counterclaim for trespass, the court observed that "[t]he water at issue was already destined to arrive upon [Penning's] property" and rejected the claim. On the Zwarts' breach-of-contract claim, the court held sua sponte that the doctrine of promissory estoppel applied. The court concluded that the Zwarts justifiably relied on Penning's promise that they could install an independent tile line if the joint system became overwhelmed and that the Zwarts suffered substantial and foreseeable economic damages as a result of the denial.

[¶7.] On March 17, 2017, the circuit court issued findings of fact and conclusions of law. The court awarded the Zwarts $17,705.34 for crop damages caused by excess water on the land between 2012 and 2016 and required Penning to pay prejudgment interest. The court also held that the Zwarts were entitled to an easement to install and maintain an independent tile line underneath Penning's property. On June 7, 2017, the court entered its final judgment. Penning appeals, raising three issues for our review:

1. Whether either party violated the civil law rule.

2. Whether the doctrine of promissory estoppel permitted the circuit court to enforce Penning's promise.

3. Whether either party effected a trespass.

-4-

## Analysis and Decision

1.    *Whether either party violated the civil law rule.*

[¶8.]       Penning argues the circuit court made both erroneous findings of fact and incorrectly applied the civil law rule. We review findings of fact for clear error. *Black Hills Excavating Servs., Inc. v. Retail Constr. Servs., Inc.*, 2016 S.D. 23, ¶ 7, 877 N.W.2d 318, 321. "Where the trial court has resolved conflicts in evidence, we cannot change its findings." *Fall River Cty. v. S. Dakota Dep't of Revenue*, 1996 S.D. 106, ¶ 22, 552 N.W.2d 620, 626. "Conclusions of law are given no deference and are reviewed de novo." *Surat Farms, LLC v. Brule Cty. Bd. of Comm'rs*, 2017 S.D. 52, ¶ 12, 901 N.W.2d 365, 369.

[¶9.]       Penning observes that this case does not involve the discharge of surface waters into a natural watercourse at the property line. Rather, the Zwarts drained the water through an underground tile running parallel to Bachelor Creek. The Zwarts respond that under South Dakota law, "owners of land may drain the land in the general course of natural drainage by constructing open or covered drains and discharging the water into any natural watercourse[] [or] into any established watercourse[.]" SDCL 46A-10A-70; *see also Winterton v. Elverson*, 389 N.W.2d 633, 635 (S.D. 1986). The Zwarts suggest that Penning's drain-tile system constitutes an established watercourse that in turn discharges into a natural watercourse, i.e., Bachelor Creek.

[¶10.]      "For rural surface water drainage, South Dakota follows the civil law rule[.]" *Surat Farms*, 2017 S.D. 52, ¶ 15, 901 N.W.2d at 370. The civil law rule burdens the owner of agricultural property located downstream "with an easement under which the dominant, or upper property owner may reasonably discharge

surface water over the servient estate through natural watercourses." *Knodel v. Kassel Twp.*, 1998 S.D. 73, ¶ 10, 581 N.W.2d 504, 507. In *Hendrickson v. Wagners, Inc.*, we stated that "[a] dominant estate holder has no right to discharge surface water by artificial means onto the property of another." 1999 S.D. 74, ¶ 10, 598 N.W.2d 507, 510. However, we have also held that "[t]he owner of a dominant estate is permitted to drain water onto a servient estate 'by means of [an] . . . established water course.'" *Magner v. Brinkman*, 2016 S.D. 50, ¶ 15, 883 N.W.2d 74, 81 (quoting SDCL 46A-10A-20(4)). An *established water course* is defined as

> a fixed and determinate route, either natural *or man-made*, by which water has flowed from one parcel of real property to another and by which water has been discharged upon a servient estate for a period of time, on such a regular basis and in such quantities as to make it a predictably continuous activity[.]

SDCL 46A-10A-1(9) (emphasis added). A *natural water course* is

> a fixed and determinate route by which water naturally flows from one parcel of real property to another due to the conformation of the land and by which water is discharged upon the land receiving the water. It is not necessary that the force of the flow of water be sufficient to form a channel having a well-defined bed or banks[.]

SDCL 46A-10A-1(15).

[¶11.] In claiming that the circuit court erred, Penning highlights a statement in the court's letter decision that water "still drains in its natural direction and in natural quantities" after installation of the Zwarts' drain-tile system. Penning contends that a discharge of water several feet underground into his tile line does not constitute drainage into a natural watercourse. Further, Penning argues that uncontested testimony established that water "erupted" out of the ground around Penning's tile. Penning also disputes the court's finding that the

restrictor plate "obstructed subsurface drainage from [the Zwarts'] field and prevented water from naturally draining from [the Zwarts'] property into a natural watercourse, causing unnatural flooding and crop damage from 2012 through 2016." Penning claims that the court confused "water flowing through artificial drain tile below the surface with natural surface drainage in a natural watercourse," noting that the restrictor plate "could not impede the natural flow of water across the surface in any way."

[¶12.] However, even if the Zwarts had no right to drain water into Penning's drain-tile system under the civil law rule, as explained below, this is in essence a contractual dispute. Because the parties' agreement controls whether the Zwarts were permitted to do so, we need not decide this issue under the civil law rule. Further, the court did not err in finding that Penning's actions led to obstructed subsurface drainage. Absent Penning's agreement to allow the Zwarts to connect to Penning's drain-tile system, the Zwarts would not have installed their tile line deep enough underground to divert subsurface drainage into Penning's system. And once connected, the water drained into Penning's drain-tile system and eventually into Bachelor Creek, a natural watercourse.

[¶13.] The circuit court also did not err when it found that Penning installed a metal-restrictor plate in 2012, without notice to the Zwarts, causing water to pond on the Zwarts' parcel. The court found that after the restrictor plate was removed in 2013, Penning disconnected the Zwarts' drain-tile system from his own and revoked his permission to allow the Zwarts to install their own tile across his field.

The evidence supports the circuit court's findings that these actions resulted in damages to the Zwarts' crops from 2012 through 2016.

[¶14.] Penning additionally takes issue with the court's finding that an earthen berm installed in 2008 obstructed a natural drainage ditch. Even if the court erred in this determination, it ultimately concluded that "the berm was not large enough to permanently hold water back and, thus, was not the legal cause of damage to [the Zwarts'] crops in 2011." Therefore, any claimed error would be harmless because the damages awarded were for those suffered between 2012 and 2016, i.e., those caused by ponding water due to Penning installing the restrictor plate and severing the connection between the drain-tile systems. *See* SDCL 15-6-61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

> 2. *Whether the doctrine of promissory estoppel permitted the circuit court to enforce Penning's promise.*

[¶15.] In their amended complaint, the Zwarts argued Penning breached their oral agreement permitting the Zwarts to connect to Penning's drain-tile system. The Zwarts contended that they acted in reliance by building their drain-tile system at a depth too deep to otherwise function properly. The court found that the Zwarts established a contract by promissory estoppel, stating that "it was reasonably foreseeable that [the Zwarts] would dig their tiling system deeper as a result of [Penning's] promise, and [the Zwarts] acted reasonably in their reliance on [Penning's] promise[.]" The court found the Zwarts "spent thousands" of dollars more in order to connect to Penning's drain-tile system or alternatively at a depth

deep enough so as to connect it to an independent tile line to run underneath Penning's parcel in the event the joint system overloaded.

[¶16.] "Promissory estoppel may be invoked where a promisee alters his position to his detriment in the reasonable belief that a promise would be performed." *Hahne v. Burr*, 2005 S.D. 108, ¶ 18, 705 N.W.2d 867, 873. Promissory estoppel requires that:

> 1) the detriment suffered in reliance must be substantial in an economic sense; 2) the loss to the promisee must have been foreseeable by the promisor; and 3) the promisee must have acted reasonably in justifiable reliance on the promise made.

*Id.*

[¶17.] Penning does not dispute his promises to the Zwarts that they could connect their drain-tile system to his so long as his system did not become overwhelmed and that the Zwarts could install their own separate tile line beneath Penning's parcel if the system became overwhelmed. Nevertheless, Penning argues the circuit court erred because it "effectively expanded Penning's permission to grant the Zwarts an unlimited period of time in which to install their own line," resulting in an injustice as opposed to avoiding one. *See Scott v. Hyde*, 440 N.W.2d 528, 531 (S.D. 1989) (observing that a promise is enforceable "if injustice can be avoided only by enforcement of the promise").

[¶18.] The parties did not specify a timeframe for the Zwarts to install an independent drain tile across Penning's property if Penning's system became overwhelmed. Further, although Penning asserts that the Zwarts knew about the flooding on Penning's property and failed to act, our review of the record does not lead us to conclude that the circuit court erred. It is unclear what the Zwarts

observed or whether they believed that their actions caused the flooding. Additionally, we cannot say whether the parties discussed the issue of flooding around December 2011 when Penning allegedly gave the Zwarts written permission to install an independent tile line. As such, the court did not err when it found that Penning did not address his concerns with the Zwarts.

[¶19.] Penning further argues that the circuit court erred by "effectively add[ing] terms to Penning's original promise," including the burden to give the Zwarts formal notice of the overload, to prove that the Zwarts' system overloaded Penning's tile, and to wait several years for the Zwarts to install a new tile line. But the court simply found that Penning failed to alert the Zwarts to the problem. Additionally, the Zwarts were never given an opportunity to install an independent drain tile across Penning's property after Penning disconnected the Zwarts' tile, a remedy that Penning requested when the flooding originally occurred and that the evidence suggests would resolve their water problems. Therefore, no injustice would result from enforcement of the promise, and the circuit court did not err by concluding that the Zwarts are entitled to an easement and crop damages for 2012 through 2016 based on promissory estoppel.

> 3. *Whether either party effected a trespass.*

[¶20.] Both parties allege that the other committed trespass. The Zwarts argued that one who causes water to enter the property of another commits a trespass. According to the Zwarts, the alleged trespass occurred after Penning installed the restrictor plate and severed the connection, causing water to back up on their land. Penning's counterclaim similarly asserted that discharging water on another's land constitutes a trespass, pointing to the flooding that occurred after the

drain-tile systems were connected. The circuit court held in favor of the Zwarts, citing *Judd*, 195 S.W. 119, 121.

[¶21.]     The elements of a civil trespass require:

> *One who intentionally* and without a consensual or other privilege
>
> (a) *enters land* in possession of another or any part thereof *or causes a thing* or third person *to do so*, or
>
> (b) remains thereon is liable as a trespasser to the other irrespective of whether harm is thereby caused to any of his legally protected interests.

*Benson v. State*, 2006 S.D. 8, ¶ 74, 710 N.W.2d 131, 159 (emphasis added); *see also* Restatement (Second) of Torts § 158 (Am. Law Inst. 1965).

[¶22.]     Here, both parties allege that the other caused a thing—namely, water—to enter their land without permission. In *Byram v. Lawein*, 57 S.D. 403, 232 N.W. 907, 908-09 (1930), we held that drainage of "water other than . . . natural surface water on the plaintiffs' right of way" constituted a continuing trespass that could be enjoined. *See also Brandt v. Cty. of Pennington*, 2013 S.D. 22, 827 N.W.2d 871. Similarly, in *Judd,* the Kentucky Supreme Court held that the defendant committed "innumerable trespasses" on the plaintiff's land by constructing an embankment that "forced [water] against and over the lands of appellees in greater volume" and frequency. 195 S.W. at 120.

[¶23.]     However, these cases involved the introduction of foreign water onto another's land. Here, the Zwarts claimed that installation of the restrictor plate, which occurred at the property line, caused water to pool on their property, presumably by backing it up. We cannot say that one who causes water to *remain on* as opposed to *enter* another's land commits a trespass. *See Benson*, S.D. ¶ 74,

-11-

710 N.W.2d at 159. While "one *who*"—that is, a person—"intentionally . . . remains thereon" may be guilty of a trespass, we have not said that a person who causes a *thing* to do so is. *Id* (emphasis added). The circuit court therefore erred in concluding a trespass occurred.[3]

[¶24.] Nevertheless the circuit court correctly disposed of Penning's counterclaim. As we have explained, the parties' agreement permitted the Zwarts to discharge water into Penning's drain-tile system. Possessing a privilege to do so, we cannot hold that the Zwarts committed a trespass. Penning argues that the Zwarts violated their agreement and knew about the flooding, thus defeating any assertion of privilege or consent. H.owever, we address these claims above and conclude that no such violation occurred. Moreover, as the circuit court determined, the Zwarts did not "cause" the water to enter Penning's parcel: Penning's property receives drainage waters from sources other than Zwarts' property and Penning did not prove that water draining from Zwarts' land onto Penning's from 2011 through 2013 was unnatural. Therefore, the court did not err in rejecting Penning's counterclaim.

## Conclusion

[¶25.] Because the parties' agreement permitted the Zwarts to discharge water into Penning's drain-tile system, the court did not err when it concluded that promissory estoppel entitled the Zwarts to damages and an easement. However, no

---

3. The circuit court's holding on trespass was a separate and distinct basis for the damages award. Because we affirm the court's decision based on promissory estoppel, our reversal on this issue does not impact the outcome of the case.

trespass occurred because Penning did not cause water to *enter* the Zwarts' land. Rather, the water was already on the land and Penning simply caused it to remain there.

[¶26.] Affirmed in part and reversed in part.

[¶27.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and JENSEN, Justices, concur.