## Jones & Company v. The Ferro Concrete Construction Company, et al.

(Decided May 27, 1913.)

### Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Negligence—Damages—Injury to One Contractor by Negligence of Another.—The Louisville Commissioners of Sewerage are not

answerable in damages for an injury done to one contractor by the negligence of another contractor for the building of a sewer.

2. Negligence—Damages—Injury to Contractor Engaged in Public Work—Liability.—One contractor who injures another contractor by his negligence is liable therefor, in the case of a public work just as he would be in the case of a private work.

SHIELD & CAMPBELL and CAMDEN R. McATEE for appellants.

E. P. HUMPHREY, JOHN MARSHALL and WM. W. CRAWFORD for appellees.

Opinion of the Court by Chief Justice Hobson—Affirming as to the Sewerage Commission and Reversing as to the Ferro Concrete Construction Company.

The Commissioners of Sewerage of Louisville, acting under the statute, made plans for the construction of a system of sewers, divided the sewers into sections, and took bids for the construction of the different sections. One of the largest sewers was the Southern Outfall, extending westwardly through the southern part of the city and emptying into the Ohio River west of the city. Section A of this sewer extended from the river to the east bank of Paddy's Run; section B extended from the east bank of Paddy's Run to Thirty-Second street and Woodland avenue. Section A was let to the Ferro Concrete Construction Company; section B to T. B. Jones & Company. Paddy's Run is one of the old natural sewers of the city which carries off the water from a large water shed. The line of the proposed Southern Outfall sewer crossed Paddy's Run. At this point Paddy's Run is over one hundred feet wide and twenty-five feet deep from the top of the bank to the bottom. At ordinary times, the water in Paddy's Run is only a foot or two deep, but in case of a heavy rainfall, a great quantity of water is collected in it.

T. B. Jones & Company began to work on Section B before work was begun on Section A. They sunk a wooden sheathing of heavy planks about five feet east of the beginning point of Section B, and then began excavating eastwardly. They built in the western end of the sewer a brick bulkhead with Portland cement, which was attached to the side wall. This bulkhead was a few feet east of the wooden sheathing, the entire space between being filled with dirt. The bulkhead was braced inside the sewer with heavy timbers, its purpose being to keep the water of Paddy's Run from getting into the sewer in

time of freshet. The sewer contained a great deal of machinery and other property of the contractors, and at its completion was to be inspected before acceptance and therefore it was necessary to have it in clean and in good condition every way. When the Jones Company had completed their sewer for a distance of about 1,600 feet east of the beginning point on Paddy's Run and were extending their excavation further to the east, the Ferro Concrete Construction Company was likewise coming eastward with its work on Section A, beginning at the river. In February, 1909, it undertook to cross Paddy's Run, the plans here requiring that the sewer should lie wholly or almost wholly below the bed of the creek. To this end the Ferro Concrete Construction Company began excavating across the bed of the creek, the dirt taken out being dropped in the creek bed below the excavation and by the side of it. Excavations were also made in both banks, and this dirt was also piled in the creek bed. In excavating on the east bank, they went across the Jones line and removed the sheathing, and all the dirt in front of the Jones brick bulkhead. The dam in the creek formed from the dirt they took out, became thirty or thirty-five feet high above the excavation bottom. To carry off the waters of Paddy's Run two twelve-inch tiles were laid down when the excavation was begun, but the earth spread out so at the bottom that these pipes were more or less obstructed. In this condition of things, there were heavy rains in February from which a large quantity of water accumulated against the dam and rose within five feet of its top, submerging the bulkhead entirely, the drain tiles in the dam being clogged. The danger to Jones & Company in this condition of things became apparent, and the matter was taken up between the two contractors and the Sewerage Commission, but before anything was done, and when, according to the proof, the trouble might have been remedied before any damage had been done, on the morning of February 24, the bulkhead could stand the strain no longer, and gave way. The flood stood twenty-six feet deep in the Jones sewer at the eastern end. Four days were consumed in pumping the water out, and the machinery had to be repaired; the debris had to be removed and considerable damage was done to the Jones equipment. Jones & Company brought this suit against the Commissioners of Sewerage and the Ferro Concrete Construction Company to recover the damage which they thus

sustained, and at the conclusion of the evidence which showed the facts we have stated, the circuit court peremptorily instructed the jury to find for the defendants. The plaintiffs' petition having been dismissed, they appeal.

The circuit court in an opinion which is filed in the record stated in substance that the sewer commission is not responsible because they were acting in a governmental capacity in a work undertaken for the benefit of the health of the city (Smith v. Com. of Sewerage, 146 Ky., 562); and that if the governmental authority itself is not responsible, the agent employed by it is not responsible. (Bluegrass Traction Co. v. Grover, 135 Ky., 685). Concluding its opinion the court said:

"The matters complained of here, as it seems to the court, tend to establish negligence on the part of the Ferro Concrete Construction Company; yet under the authorities I have just referred to, and under the construction of the law as made by the Court of Appeals, it is my duty to instruct you peremptorily that there is no cause of action in favor of the plaintiffs. I do it with considerable regret in this case. Personally, I think it is a case that ought to go to the jury, but I am bound to follow the decision of the Court of Appeals, and it is my duty to so instruct you."

Counsel assail both these conclusions of the court, and, as they depend upon different principles, they will be considered separately.

1. *As to the liability of the Sewerage Commission.* We have held in a long line of cases that the city is not liable for the negligence of its servants in the discharge of its governmental functions. (Twyman v. Frankfort, 117 Ky., 518; Kippes v. Louisville, 140 Ky., 423; City of Bowling Green v. Rogers, 142 Ky., 559; Allison v. Cash, 143 Ky., 679; Smith v. Commissioners of Sewerage, 146 Ky., 562, and cases cited.) We deem it unnecessary to re-state the reasons impelling this conclusion as they are fully set out in the opinions referred to. In the case last cited it was pointed out, that this rule applies to causes of action for the death of a person under section 241 Ky. Stats., no less than in other cases. It is insisted, however, that the rule cannot be applied here by reason of section 242 of the Constitution which is as follows:

"Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for prop-

erty taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured at the election of such corporation or individual, before such injury or destruction."

It is insisted that this case involves the taking or injury of private property, and that under the Constitutional provision compensation must be made. But it will be observed that the constitutional provision is that municipal or other corporations invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them. In other words, the provision has reference to property taken under the power of eminent domain; it has no reference to property which was not taken and could not be taken under the power of eminent domain. It is not the purpose of the constitutional provision to make municipal corporations liable for all injuries to property inflicted by the negligence of their servants, irrespective of the fact that the corporation was in this work acting as an arm of the State government, and discharging a governmental function. The case we think comes in substance to this: The Sewerage Commission was having a large sewer built and let one section of the sewer to one company, and another section to another. By the negligence of one of the contractors, an injury was done to the other. We deem it unnecessary to determine whether the contractors were independent contractors or the servants of the sewerage commission. If they were independent contractors, the Sewerage Commission was not responsible for their acts; if they were not independent contractors, but servants of the Sewerage Commission, then the Sewerage Commission is not responsible to one of its servants for the negligence of another servant. To so rule would be to make the Sewerage Commission answerable in all cases for damages done to another by the negligence of its servants; and this, as we have repeatedly held, is not the law. To so rule would deflect from their express purposes public taxes levied by law pursuant to the Constitution for governmental purposes and might defeat entirely the purpose of the levy as well as the purpose of section 180 of the Constitution which provides:

"Every act enacted by the General Assembly, and every ordinance and resolution passed by any county, city, town, or municipal board or local legislative body, levying a tax, shall specify distinctly the purpose for

which said tax is levied, and no tax levied and collected for one purpose shall ever be devoted to another purpose.''

The money in the hands of the Sewerage Commission is a fund created to supply the city with an adequate system of sewers and under the mandate of the Constitution, may not be devoted to other purposes. Were the rule otherwise the usefulness of the various arms of the State government might be seriously crippled.

We, therefore, conclude that the circuit court proprly instructed the jury peremptorily to find for the Sewerage Commission.

2. *As to the liability of the Ferro Concrete Construction Company.* The circuit court seems to have misapprehended the decision in Bluegrass Traction Company v. Grover, 135 Ky., 685. In that case the Bluegrass Traction Company was building its line from Georgetown to Lexington. Its line crossed the turnpike leading from Georgetown to Lexington, and also crossed the Cincinnati Southern Railroad near the same point as the turnpike crossed it. There was then a grade crossing of the turnpike over the railroad. It was agreed between the railroad company, the traction company and the fiscal court of Fayette county, that the traction company at its expense would change the location of the turnpike, and build an overhead bridge across the railroad. It being agreed that the county would keep up the turnpike after it was rebuilt on either side of the bridge and that the traction company would maintain the bridge ''free of cost to Fayette county.'' The work was done as agreed. Some years afterward Grover's horse got his foot through a hole in the bridge, and his leg was broken. He sued the traction company for the value of his horse, his action being based upon the contract between the traction company and the county. The question was whether it was within the reasonable contemplation of the parties to the contract that the traction company assumed liability for such an accident, its undertaking being only to maintain the bridge ''free of cost to Fayette County.'' After pointing out the peculiar language, and what the parties had in mind in making the contract, the court said:

''In other words, it is clear from the contract that what the parties had in mind was that Fayette County should be free forever from the burden of maintaining the bridge. It is simply a contract by which the traction

company assumes to do for Fayette County what it would otherwise be required to do; and by this contract it assumes no greater liability than Fayette County was under.''

That was a suit upon the contract and the question decided was simply that the damages sued for were not within the reasonable contemplation of the parties to the contract, and not covered by its terms. If this was a suit upon the contract made by the Ferro Concrete Construction Company with the Sewerage Commission, and damages were claimed by reason of a breach of the terms of that contract, then the two cases would be similar. But this is not a suit for a breach of a contract. It is a suit to recover damages for negligence. If in that case the traction company had negligently thrown a timber from its bridge and injured Grover's horse beneath, then the two cases would be parallel. No such question was presented by that record, and the opinion of the court is limited to the effect of the contract. The court did not have before it in that case the question of the liability of the traction company for negligence independently of its contract with the fiscal court.

Two contractors for a public work stand as to each other just as two contractors would stand who had undertaken any other work. It is the duty of each to so use his own as not to injure the other, and to exercise such care for the protection of the other as a man of ordinary prudence would use for his own protection under like circumstances. The fact that the Sewerage Commission is not responsible for the negligence of either of the contractors to the other adds nothing to and subtracts nothing from their liability to each other. While we have uniformly held that these agencies of the city exercising its governmental functions are not responsible for the negligence of their servants, we have never held or intimated that the negligent servants were not responsible to any one injured by their negligence. The rule exempting the public agency from responsibility, rests upon the ground that it is discharging a duty imposed upon it by law with the public funds, and that these public funds cannot be diverted from the purpose to which they are dedicated by law by reason of the negligence of the servants of the city. But the servants themselves are liable for the consequences of their own negligence just as they would be in any other employment. The master is not liable to his servant for an

injury inflicted on him by the negligence of his fellow servant. But the non-liability of the master has no effect on the liability of the servant whose negligence caused the injury. The owner of property is not liable to an independent contractor for an injury done him by the negligence of another independent contractor, but each of the contractors is liable to the other for the consequences of his own negligence. So here the non-liability of the commission affects in no manner the liability of the contractors to each other.

We, therefore, conclude that the court erred in instructing the jury peremptorily to find for the defendant, the Ferro Concrete Construction Company. We do not mean to decide that the Ferro Concrete Construction Company is liable; we only mean to decide that there was sufficient evidence to take the case to the jury, and the question of liability should be passed on by the jury. The measure of damages in such a case is the actual loss sustained as in other cases where property is flooded by the negligence of another.

The judgment as to the Sewerage Commission is affirmed, and as to the Ferro Concrete Construction Company, the judgment is reversed and cause remanded for further proceedings consistent herewith.