## Jefferson County v. Bischoff et ux.

(Decided March 24, 1931.)

HARRIS COLEMAN, County Attorney, and S. L. GREENEBAUM, Assistant County Attorney, for appellant.

HUBBARD & HUBBARD for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

The appellees, Ed Bischoff and his wife, Katherine E. Bischoff, have recovered of the appellant, Jefferson county, a judgment for $800 for damage to their jointly owned property and interference with its occupancy as a home by reason of the operation of a rock quarry opened in May, 1929, and operated by the county in connection with the construction and maintenance of its roads. The county asks a reversal of that judgment upon several grounds.

It is argued that the suit cannot be maintained against the county because it is a governmental agency and the provisions of section 242 of the Constitution, which invests the county with the privilege of taking private property for public use upon making just compensation for property so taken or injured, cannot apply and are inoperative, for the reason that the county could not in the nature of things, have complied with the constitutional injunction that payment must be made before such injury is done. It is said that it would have been impossible as a practical matter for the county to have compensated the owners of the property, since the amount of the injury could not have been ascertained in advance, and furthermore the constitutional provision has no reference to property which could not be taken under the power of eminent domain. The arguments, it seems to us, are unsound. Section 242 declares that compensation must be either ''paid or secured at the election of

such corporation or individual, before such injury or destruction." Why could not appellees have been secured in the payment of just compensation for any anticipated or possible injury? The quarry was just across the road a short distance from their home. Damages might well have been anticipated. If, for the necessary operation of the quarry, it became necessary to use or disturb appellees' property, why could not that have been condemned? The injury to the property as an incident to construction and operation of public enterprises has always been considered as a taking of property within the purview of the section of the Constitution referred to, and counties and other municipal organizations have been held liable for such damages. Webster County v. Lutz, 234 Ky. 618, 28 S. W. (2d) 966; Moore v. Lawrence County, 143 Ky. 448, 136 S. W. 1031; Wharton v. Barber, 188 Ky. 57, 221 S. W. 499; Letcher County v. Hogg, 209 Ky. 182, 272 S. W. 423; Harlan County v. Cole, 218 Ky. 819, 292 S. W. 501.

Complaint is made that incompetent evidence was admitted to appellant's prejudice. This consists in the court having permitted Mrs. Bischoff to testify after her husband had been introduced as a witness. She was the joint owner of the property and a plaintiff, but under the interpretation of section 606 of the Civil Code of Practice both the husband and wife may not testify, if objection is made. De Graw v. Levin, 234 Ky. 73, 27 S. W. (2d) 432, citing City of Covington v. Geyler, 93 Ky. 275, 19 S. W. 741, 14 Ky. Law Rep. 145; and Weber v. Lape, 145 Ky. 769, 141 S. W. 67. But the defendant waived the incompetency of the wife as a witness by not objecting to her introduction. Counsel did suggest that her testimony should be confined to facts relating to the damages of the property, and the court sustained his motion that the jury should be so instructed with reference to what she testified. The suggestion and motion did not raise the question of her competency. Hembree v. Commonwealth, 210 Ky. 333, 275 S. W. 812, reviews the authorities on this subject pertaining both to civil and criminal cases.

The ground that the damages awarded are excessive is insisted upon. There was no contradiction of the plaintiffs' evidence that their premises had been shaken by the blasts, and buildings and land peppered with rocks thrown from the quarry, except two or three supervisors of road work stated that on one or more occasions they

had been present when blasts were discharged and saw no stones cast upon appellee's property. Plaintiffs proved that the roofs of their dwelling house, barn, and toolshed had been badly damaged; that the foundation and chimney of their home had been cracked and the walls of their cistern broken so as to let out all the water, which found its way into their cellar; that the plastering had been damaged and the wall paper soiled by the leaking of the roof. It is true that the amount of damage as to some of the items was rather indefinite and that the damage to the roofs was expressed in terms of replacement costs. All agree that the proper criterion in such instances is a sum sufficient to restore the property to the condition it was in before the injury. The evidence was that it was necessary to replace the roofs, as it was impracticable, if not impossible, to restore them. No doubt under the instructions of the court, which stated the proper measure of damages, the jury took into consideration the age of the roof destroyed, for the verdict was less than the aggregate damages shown by the evidence. An addition of the minimum sums proven as damage shows that it was $650, and the maximum $705. On these items the verdict was $600. Under the instructions that the jury might find for diminution in the value of the use of the property by reason of the blasting operations not to exceed $50 a month for eight months, or a total of $400, the jury returned a verdict for $200. The evidence as to this item is not as satisfactory as it might be, but it was sufficient to sustain the verdict.

Perceiving no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.