## City of Middlesboro v. Chasteen.

Feb. 14, 1941.

**428**

R. L. Maddox and H. F. White for appellant.

Davis & Edwards for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Prior to April 1938, appellant, in concert with the National Government, proposed to erect a flood wall, making it necessary to obtain certain parcels of land, among which were tracts belonging to appellee. Failing upon terms, appellant began condemnation proceedings, the petition describing portions of lots Nos. 1 and 2 as described in deeds to Mrs. Chasteen's father, the portion of No. 1 said to contain about 213 square feet, and of No. 2 approximately ¾ of an acre. Commissioners appointed by the court allowed $15 for the first "tract" and $35 for damages resulting to adjacent land. They allowed for "tract" No. 2 $150 with no resulting damages.

Appellee filed exceptions contending that the allowances were greatly inadequate. In a trial in the county court plaintiff dismissed so much of its petition as sought to condemn the first tract, and the only question involved was the value of tract No. 2 and resulting damages. The jury allowed $150 for the land and damages of $12.50.

Mrs. Chasteen appealed to the circuit court, filing amended exceptions, which enlarged and more particularly specified elements of damage. The jury allowed

$250 for the land taken, and $750 damages to other property; and from judgment entered in accord appeal is taken. Motion for a new trial supported by seven or more grounds was overruled and on appeal, counsel for appellant insists that:

(1) The verdict is excessive as to the value of land taken and for damages.

(2) The court erred in not limiting the question of damage, in so far as the construction would affect lots in Block B, where the appropriated lots were located.

(3) The proof as to damages claimed was of such speculative character that it did not reflect what might be considered actual damages. And appellee's remedy was by action for damages to adjacent property.

At the outset, we find that there were presented to the jury (whether formally introduced as evidence or not, we do not know) a map or blueprint apparently showing the land proposed to be taken, the entire two tracts, the proposed flood wall construction, and perhaps a plat from official files. These are not in the record, and since witnesses testifying pointed to "here" and "there," in locating the various involved places and points, making it difficult for us to describe the situation, we call attention of counsel to paragraph 11, Rule 2 of this court and Igo v. Smith, 282 Ky. 336, 138 S. W. (2d) 497.

It may be gathered from the evidence that the tracts of land owned by appellee are located in the northwest section of the city, and divided into two blocks. Block A faces on 35th Street, in which and on lots 1, 2 and 3 (25 x 190 feet) is a dwelling with improvements. In this same block appellee owns lots numbered 21 to 38, facing unimproved 34th Street. These lots are separated by an unopened alley. She owns lots 13 to 25 in Block B, and it is agreed that the land taken comprises all of lots 21 to 25, and a portion of lots 15 to 12, which face 34th Street, and are separated from Block A by Virginia Avenue. None of the streets or alleys mentioned, save 35th Street, has ever been publicly used. The tracts were formerly owned by Davidson, who sold to Pruett, the father of appellee, in 1925. Davidson, in 1921, had platted the subdivision, prior to sale to Pruett (not by "lot"), and says he dedicated the

street and alleys to the city. The sale price (no improvements then), Pruett says, was around $1,250. Pruett spent a considerable sum in building "blind ditches, grubbing and sowing the land in peas and beans; turning them under, until he had brought it to a good state of cultivation," and in building the home and outhouses. After taking land there would be left 36 lots of dimensions set out above, with what is called Virginia Avenue and two alleys partly enclosed. His drainage and improvements which materially improved the property had been made with a view of finally "selling it off in lots," though he had never sold but one.

Estimating the damage to the property as a whole, measuring it by the fair market value before and after the taking of a portion, he is rather indefinite, but as best we gather he fixed the depreciation at more than $2,500, for which diminution he gave fairly good basic reasons. The building of the dam according to witness will interfere with ingress and egress, air and light, though results are not made clear, and interfere with flow of a small stream into the property. It is not clear whether he bases his estimated damage on the loss of use of the land for farm or garden purposes, or as a subdivision but he emphasizes the former.

John Sutton testified chiefly as to cost of buildings and the situation before and after construction, and these questions (without objection) were asked, and answered:

"Taking into consideration the reasonable market value of this property, these lands and lots, houses and all improvements made on all the property there, what would be the reasonable value of all that property before taking any of it," and "What would you say would be the reasonable market value of what is left, after the taking and after the construction?"

His answer to the first part was $4,000 and to the second, $800 to $1,000. He was treating the whole tract as being used and to be used for small farming purposes. The above questions were propounded to four other witnesses who fixed comparative values as had Mr. Sutton. By stipulation it was agreed that appellee had present five other witnesses who if introduced would have testified substantially as had those whose testimony we have

recounted. This may be taken to apply to one witness who fixed the land value; it was agreed that the two tracts as a whole contained about 3¾ acres.

Mr. Douglas, a civil engineer, explained to the jury the general lay of the land, and from a blueprint the proposed flood wall. Asked what he considered a fair market value of the land actually taken, he fixed it at less than $150 and said its taking would not depreciate or enhance the value of the remainder. That the taking will include a part of Virginia Avenue and the flood wall will be built in a part of 35th Street near the house, seems to be borne out by proof.

Mr. Davidson, who owned the property, fixed the value of land taken at $150 with no resulting damage, as he "did not know the construction plan." Several other witnesses testified in like manner and to the same effect as to values and these included the three commissioners. Some undertook to fix the values of three lots and the improvements (residence) at about $1,600, and in general they thought the land would not be damaged "very much"; and all agreed that the wall would vary from 17 to 20 feet in height; in width 18 to 20 feet at the top and 80 feet at the bottom.

The burden of proof was on the city; both parties filed exceptions to the commissioner's report. Commonwealth by State Highway Commission v. Crutchfield, 261 Ky. 272, 87 S. W. (2d) 598. The manner in which the proof was presented creates the difficulty in determining the true measure of damage. It is quite clear from the proof, and an instruction offered by appellant and rejected, that parties were proceeding on widely different theories of values and damages and applicable law; one on the assumption that city lots were being taken without damage to remaining lots owned by appellee, the other, that the fraction taken was a segment of a larger tract or contiguous tracts used for residence and agricultural purposes.

Appellant argued that the entire tract had been laid out in blocks, with streets and alleys for many years, and dealt with by the owners as blocks and streets of the city, and that damage to other property or lots should not be taken into consideration, citing Cranley v. Boyd County, 266 Ky. 569, 99 S. W. (2d) 737, and that the lots are not contiguous. This contention is fully an-

swered in Jefferson County v. Bischoff, 238 Ky. 176, 37 S. W. (2d) 24, as is the argument that appellee should have been relegated in seeking relief to common-law action for damages.

As noted; appellant's proof was presented in the light of the contentions now made. Witnesses only attempted to fix the value of lots taken for the intended purpose. Most of them fixed these values not as of city lots, but on a per acre valuation, making their average estimates at less than $100 for land taken. Under appellant's view of the situation, these witnesses were not asked as to damages to the entire residue, nor as to difference in value, before and after taking. Appellant did bring out some evidence as to the value of the three lots owned by appellee, upon which the house and outbuildings had been erected, but none on the question of diminution of the tract on which these lots were situated, or other property, though it may be inferred that appellant's witnesses were of the opinion that there would be none. On the contrary all of appellee's evidence was based upon the idea that the 3¾ acres of land was in reality one tract of land.

We think the preponderance of proof shows and the court held that the land owned by Mrs. Chasteen was to be considered and treated as one tract or contiguous tracts and used for agricultural and residence purposes. However, there would be no great difference in conclusions as to value or damages if considered as lots suitable for building purposes.

Viewing the evidence in this light, and as we have substantially detailed it, we can hardly say that the verdict is, as to either value or damgae, "purely speculative." The most that can be said of all the evidence is that it is not as satisfactory as it should have been, but based on the hypothesis of appellee, it was sufficient to uphold the jury's verdict, and appellant's evidence, based on an entirely different conception, did not overcome it.

Appellee argued that Virginia Avenue and the alleys had been abandoned; this perhaps based on the proof that they had cultivated the two tracts without objection. Appellant claims otherwise. The court had exhibits before it, as did the jury. This proof as far as we know may have been of such persuasive influence as

to justify the court to determine as a matter of law, and the jury as a matter of fact, that the land sought to be taken was a farm or garden tract.

Another point very favorable to appellee is that the jury was sent to and viewed the land involved, after the flood wall had been fully or partially completed. Their estimate as to value of the land and damages and their conclusions are of more than persuasive influence. Bailey v. Harlan County, 280 Ky. 247, 133 S. W. (2d) 58.

Appellant's argument on the court's refusal to give instruction No. 3 will illustrate the confusing or unusual situation. There was little or no complaint of instruction No. 1, given by the court. It was to all intents and purposes the same as No. 1, offered by appellant and we conclude, correctly outlined the law. Counsel's complaint is that the court erroneously refused to instruct the jury that the words "entire tract," as used in instruction No. 1, should be applied solely to tract No. 2, or the lot from which the land was taken. The court considered as a matter of law, and the jury as a matter of fact under the instruction, found the lands involved as one tract or contiguous tracts and these conclusions found basis in competent evidence, without recourse to proof introduced and omitted from the record. We must therefore conclude that the court properly rejected the tendered No. 3 instruction. There was competent evidence to support the judgment as to value and damage to residue, Miller v. King, 278 Ky. 151, 128 S. W. (2d) 621, augmented by the jury's inspection.

Judgment affirmed.