**V. T. C. LINES, Inc., Appellant,**

**v.**

**CITY OF HARLAN, Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 22, 1957.

Rehearing Denied June 20, 1958.

J. B. Johnson, Harlan, Chat Chancellor, Frankfort, for appellant.

Ray O. Shehan, James S. Greene, Jr., Harlan, for appellee.

MOREMEN, Chief Justice.

Appellant, V. T. C. Lines, Inc., a common carrier of passengers for hire, has its bus station and garage located across the street from a swimming pool owned and operated as a recreational facility by the city of Harlan. Appellant filed complaint in the Harlan Circuit Court and alleged that for several days in the spring of 1953, the city cleaned its swimming pool by sand-blasting it with the result that the emery dust used, settled in great quantities in and on the bus station and garage and caused damage to the working parts of the diesel engines which were used in the buses. It was explained that diesel engines do not have electrically operated ignition systems, that the motors are started by forcing air into the cylinders in large quantities so that the temperature of the air, because of the compression, becomes very hot and causes the fuel to ignite and the cylinders to fire. It was averred that the polluted air caused great wear and tear in the metal and moving parts of the automobile engines and destroyed their usefulness and life.

Appellee filed answer which set up, among other defenses, that the damages, if any, resulted from the exercise of a governmental function.

The city filed a motion for summary judgment and the court, being of the opinion that

"The ground for sustaining the motion for summary judgment is based on the proposition that the City being an arm of the state government and the acts complained of being in the nature of a governmental function and that the property claimed to have been injured being personal property and not such property that may have been condemned pursuant to section 242 of the Kentucky Constitution, the plaintiff has no cause of action against the City. Davis v. The City of Lebanon, 108 Ky. 688 [57 S.W. 471],"
dismissed appellant's complaint.

Appellant has based its right to recover upon § 242 of the Kentucky Constitution which reads:

"Municipal and other corporations, and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction * * *."

This section, which did not appear in the Constitution of 1850, is an extension to municipalities, and others, of the limitations placed on a sovereign. It extends also to "injuring or destroying," while section 13 is confined solely to "taking." The constitutional protection against a "taking" by

the sovereign state is found in section 13 of the Constitution and reads, "nor shall any man's property be taken or applied to public use without the consent of his representatives, and without just compensation being previously made to him."

■ We have found these sections to be self-executing and in cases where property has been appropriated, the owner, despite a lack of statutory authority, has been permitted to recover damages. A suit, which seeks to recover damages after land has been taken, has been termed "a retroactive condemnation of land." Department of Highways of Kentucky v. Jackson, 306 Ky. 14, 206 S.W.2d 73, 75. And, "a condemnation [suit] in reverse." Keck v. Hafley, Ky., 237 S.W.2d 527, 529.

The trial court has seemingly based judgment on the theory that personal property is not subject to condemnation under the Constitution. We do not find this to be a satisfactory basis for the ruling. In Superior Coal & Builders Supply Co. v. Board of Education of Dayton, Ky., 260 Ky. 84, 83 S.W.2d 875, 876, it was said:

"The Constitution was written to protect the citizens from the improper acts of the state, its arms and its officers; nor does it make any difference that a portion of the plaintiff's property was personal property, as sections 13 and 242, Ky.Const., apply to both real and personal property."

The seriousness of the question here involved arises from the fact that there are several rights which stem from the principle that private rights must yield to the general public welfare.

To understand the various rights, we must remember that in the beginning the power of a sovereign was absolute and each ruler had complete ownership of all land and complete domination over the lives and property of his subjects to the extent that he could capriciously take either. The right of eminent domain is a vestige of that despotism and was attributed to the sovereign long before this commonwealth existed.

■ The constitutional provisions which we have quoted are in the nature of limitations rather than grants of right because they restrict the sovereign to taking only where reimbursement is made. We have also retained recognition of the ancient sovereign immunity which denied to citizens the right to recover for deliberate or negligent acts of the sovereign.

■ At the same time we have recognized that that which we call police power is a separate and valid authority of the state, the only difference being that eminent domain authorizes or permits taking without the consent of the owner upon compensation being paid to him, while police power authorizes regulation and destruction of property without compensation if it promotes the general welfare of the citizens. Polsgrove v. Moss, 154 Ky. 408, 157 S.W. 1133. This police power is harsh in execution and permits the destruction of private property in event of necessity, such as war. It is under this power that the government exercises its right of taxation.

The third theory, which our cases seem to entwine with the eminent domain and the police power theories, is that which relates to the immunity of a sovereign to answer for negligent acts committed by it, unless that immunity has been waived.

■ This immunity arises not in connection with eminent domain or police power, but from the primitive right, which absolute sovereigns had, to be free from the consequences of any act, and exists separate and apart from the other two theories.

All three of these subjects are based upon a primitive conception of sovereign immunity and each one, under our present development and softening of the law, should be considered distinctly. We should not borrow from the eminent domain theory of compensation for injury or damage and apply it to either of the other two premises.

It would then seem to be a simple thing to conclude that under § 242 a recovery may be had only when property is taken for a public use and then only in cases where the property itself is of the character which may be devoted to public use. This distinction was pointed out in T. B. Jones & Co. v. Ferro Concrete Construction Co., 154 Ky. 47, 156 S.W. 1060, 1062, where, in connection with § 242, it was said:

"In other words, the provision has refererence to property taken under the power of eminent domain; it has no reference to property which was not taken and could not be taken under the power of eminent domain. It is not the purpose of the constitutional provision to make municipal corporations liable for all injuries to property inflicted by the negligence of their servants, irrespective of the fact that the corporation was in this work acting as an arm of the state government and discharging a governmental function."

In subsequent cases this distinction is not too clear. In city of Louisville v. Hehemann, 161 Ky. 523, 171 S.W. 165, L.R. A.1915C, 747 it was held that a city, in maintaining a garbage dump in such condition that it was annoying and dangerous to the residents in the vicinity, was, under § 242, liable for injury to the property rights of a neighboring resident. In Jefferson County v. Bischoff, 238 Ky. 176, 37 S.W.2d 24, a recovery was allowed for damages to a neighboring home for injury to the property and for interference with its occupancy as a home by reason of the operation of a rock quarry by the county in connection with the construction and maintenance of its roads. Each of these cases apparently involves the maintenance of a nuisance, and a nuisance and an act of negligence are not always the same. But neither of these cases is predicated on the theory that private property was deliberately taken for public use and that the damage was incidental to the taking.

In Commonwealth v. Moore, Ky., 267 S. W.2d 531, 532, owners of property which adjoined a highway right-of-way sought damages from the commonwealth allegedly caused by the construction of a highway which destroyed appellees' tobacco crop by reason of the fact that large quantities of dust settled on the tobacco. The actual taking of land was involved from the outset because plaintiffs had voluntarily conveyed a portion of their property for a right-of-way. The court held that when property is appropriated for public use, the compensation to which a landowner is entitled embraces consequential damage to his remaining land and includes damage from the debris that was tossed upon it. The court concluded:

"It is our opinion that the damage caused to appellees was of a consequential nature incident to the prudent and proper exercise of the Commonwealth's right to use the property it acquired for highway purposes. It did not constitute a new taking of their property and consequently they should not have been permitted to recover compensation in these actions."

While this case does not recognize that the damage may have been the result of a negligent act or, for that matter, may have been the result of a nuisance created by the Department of Highways, still recovery was denied even though the act which caused the damage was a positive one which had occurred after the acquisition of the right-of-way was consummated.

It is somewhat difficult to reconcile the theory of this case with that previously announced in Commonwealth v. Kelley, Ky., 314 Ky. 581, 236 S.W.2d 695, 697, in which case Kelley bought a house on the south side of Highway 460. On the north side of the highway opposite Kelley's house was a ditch into which water drained from a hill side. A culvert lay under the road and emptied at the corner of Kelley's property. When there were heavy rains the water overflowed onto Kelley's property. Kelley sued for damages. There was evidence that the commonwealth had permitted the

culvert to become choked with stones, branches and other materials. Even though Kelley had purchased the house after the culverts, ditches, et cetera, had been constructed, we authorized recovery and, after a discussion of sovereign immunity, said:

"The appellants argue that to show a 'taking' of property, the petition must state facts from which the court may infer a total ouster from possession, or at least a substantial deprivation of all beneficial use of the land affected. It seems to us, however, that an interference with the legally protected use to which land has been dedicated, which destroys that use or places a substantial and additional burden on the landowner to maintain that use, is a 'taking' of his property."

In Department of Highways v. Corey, Ky., 247 S.W.2d 389, 390, a case similar in fact to the Kelley case, we reaffirmed our position and stated:

"Unless the physical damage detailed in the testimony is of such a nature as to amount to a 'taking' of property for a public purpose without just compensation, for which the State's sovereign immunity from suit is waived by Sections 13 and 242 of the Constitution, Mrs. Corey was not entitled to a judgment in her favor, and her petition should have been dismissed *because the State is immune to such a suit for negligence.*"

The petition was based on negligent construction of culverts.

In Commonwealth v. Geary, Ky., 254 S. W.2d 477, it was again stated that such an action which is in the nature of a trespass could be maintained although we observed that the court had traveled a somewhat circuitous route in order to justify recovery on the theory that the property had been taken without just compensation.

The distinction made in the last quotation above seems to lack a foundation because whenever property is physically damaged, it is taken to that extent and the circuitous route which we have traveled seems to lead us inevitably to the rule that whenever any property is damaged by a sovereign, whether it is the result of common acts of negligence or is related to the exercise of eminent domain or of police power, damages must be paid by the sovereign.

We have discussed at length a few of the great number of decided cases on this point because we believe the whole group discloses that this court, in most instances, has, with reluctance, enforced the rule of sovereign immunity and, at times, has seemed to accept any excuse, however sophisticated, in order to grant relief to a person who has been harmed. This indicates that we should either abandon the original premise and recede from our prior decisions concerning governmental immunity or should cease to contrive artificial distinctions and decide the cases by judicial fiat.

The courts of Florida have taken a giant step in Hargrove v. Town of Cocoa Beach, Florida, Fla., 96 So.2d 130. This case contains a remarkable and courageous opinion and we will quote at some length from the opinion in our discussion of the case. There the appellant alleged that her husband, while in a helpless condition because of intoxication, had been incarcerated in the town jail. She alleged that the jailer locked all the doors and departed, leaving no guard or other attendant on duty, that during the night the cell became filled with smoke and her husband was suffocated. The alleged negligence was in leaving the jail unattended.

The Florida Supreme Court faced the question squarely and remarked that since 1900 well over two hundred law review articles alone had been written on the subject, that innumerable text books had made their contribution and most of them adversely criticized the rule. It was pointed out that the doctrine arose out of the English case of Russel v. Men of Devon, 2 T.R. 667, 100 Eng.Rep.R. 359 (1788). The court said:

"Immunization in the exercise of governmental functions has been traditionally put on the theory that 'the king can do no wrong but his ministers may.' In applying this theory the courts have transposed into our democratic system the concept that the sovereign is divine and that divinity is beyond reproach. In preserving the theory they seem to have overlooked completely the wrongs that produced our Declaration of Independence and in the ultimate resulted in the Revolutionary War. We, therefore, feel that the time has arrived to declare this doctrine anachronistic not only to our system of justice but to our traditional concepts of democratic government.

"The immunity theory has been further supported with the idea that it is better for an individual to suffer a grievous wrong than to impose liability on the people vicariously through their government. If there is anything more than a sham to our constitutional guarantee that the courts shall always be open to redress wrongs and to our sense of justice that there shall be a remedy for every wrong committed, then certainly this basis for the rule cannot be supported." [96 So.2d 132.]

The opinion also pointed out the many incongruous results apparent in the cases because of the attempt of the courts to soften the rule, and under Florida law the distinction between what was governmental and what was proprietary (in regard to municipalities) was as blurred as is our law. The court then said:

"We have mentioned these incongruities in the application of the immunization doctrine in Florida merely to justify the position, which we here take, that the time has arrived to face this matter squarely in the interest of justice and place the responsibility for wrongs where it should be. In doing this we are thoroughly cognizant that some may contend that we are failing to remain blindly loyal to the doctrine of stare decisis. However, we must recognize that the law is not static. The great body of our laws is the product of progressive thinking which attunes traditional concepts to the needs and demands of changing times. The modern city is in substantial measure a large business institution. While it enjoys many of the basic powers of government, it nonetheless is an incorporated organization which exercises those powers primarily for the benefit of the people within the municipal limits who enjoy the services rendered pursuant to the powers. To continue to endow this type of organization with sovereign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century anachronism. Judicial consistency loses its virtue when it is degraded by the vice of injustice."

It was concluded and the opinion affirmatively stated that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior. However, the court specifically excepted, and did not impose liability on, a municipality in the exercise of legislative or judicial, or quasi legislative or quasi judicial, functions.

Regardless of how the majority of the personnel of this court may feel at the present time concerning whether we should follow the path marked by the Florida Court, we must recognize that we are faced with a judicial problem which results from the fact that the immunity rule (although never clearly defined) has become so imbedded in the common law of this state over the years that it has become a definite part of our mores. We must make a choice as to whether the change in such a rule should be made by the legislature or by us. The majority of the court believes that the change addresses itself to legislative discretion and that we must content ourselves only with criticism of the rule which we have created.

When we return to the facts of the instant case, we are faced with the problem of placing it in its proper category. We believe that it is not an action where our rule of "reverse eminent domain" should apply. It falls more properly into the group of cases which concern the responsibility of a city for its negligent act. We have held that maintenance of parks and recreational facilities may be classified as a governmental function and we find that the acts complained of here were the result of the negligent acts of a servant of the city while performing that function. See Board of Park Commissioners of the City of Louisville v. Prinz, 127 Ky. 460, 105 S.W. 948. We further believe that the property destroyed was not of the type which ordinarily may be devoted to public use.

Judgment affirmed.