CENTRAL KENTUCKY NATURAL GAS
COMPANY, Appellant,

v.

Oren LONG et al., Appellees.

Court of Appeals of Kentucky.

April 25, 1958.

Marion W. Moore, Blakely, Moore & Blakely, R. Vincent Goodlett, Hazelrigg & Cox, Frankfort, for appellant.

McGarry & Rich, John H. Klette, Jr., Covington, for appellees.

STANLEY, Commissioner.

This is a proceeding to condemn an easement for a gas pipe line over a 129-acre tract owned by Chester, Oren, Jane and Pauline Long. KRS 278.502, 416.230 et seq. As is usually the case, the issue was what is fair compensation for the easement and for incidental damages to the remainder of the tract. The easement, or right of way, is 50 feet wide and 2,077 feet long and embraces 2.38 acres. The county court commissioners made an award of $1,326 to the owners as "the value of the use of the occupation of the land" to be taken. They awarded nothing for incidental damages to the adjacent land. The county court accepted the commissioners' report and entered an appropriate judgment. Upon appeal to the circuit court by the landowners, the jury returned a verdict for $2,500 as the value of the right of way and $15,000 for "damages to the tract as a whole," making a total of $17,500, for which sum judgment was entered.

The gas company, as appellant, contends that the verdict is excessive and that its return rests upon unsubstantial and incompetent evidence.

The tract is bounded on the north by farm land of other persons, on the east by the Southern Railway, and on the south by a 90-acre tract within the city limits of Erlanger owned by the appellees. It is bounded on the west for about one-half the distance by the Crescent Springs County Road. The road turns east and then south, and thus bisects the tract and separates a parcel in the southwest corner from the rest of the land. A ravine, 40 or 50 feet deep, with a creek running through it, bisects the tract from north to south. It is closer to the railroad right of way than it is to the west boundary. This makes the tract somewhat hilly and in some places marshy.

The Longs bought this tract (129.-088 acres), an adjacent parcel of 90.644 and an additional parcel of 1.28 acres in 1948 as one body of land, for $42,000. The whole is referred to in the record as 220 acres. The west half of the 90-acre parcel and the southwest corner section of the 129 acres have been subdivided by the appellees into building lots and called "Hills and Dales Subdivision." The separated section appears to contain 35 or more acres. The rest of the land has not been developed or used for any purpose. The delay in development, it is said, was caused by a question of title, which was settled in Longs' favor in 1954. See Groger v. Long, Ky., 269 S.W.2d 291. It appears that but little of the land is tillable. Because of its location on the railroad, its value is in its adaptation to industrial purposes, although the western part is suitable for dwelling houses. These are legitimate considerations, for there is a reasonable expectation of such particular uses in the near future. East Ky. Rural Electric Co-op. Corp. v. Smith, Ky., 310 S.W. 2d 535. But the witnesses differ as to the value of the land for these uses because of its topography or physical characteristics. There is already a much longer oil pipe line running diagonally through the land. Both easements start at about the same point, which is at the railroad, 560 feet from the northern boundary line. However, the gas line runs more directly west than does the oil line. So, the easement being condemned is remote from the southern city boundary line and the southwest separated parcel. It would seem that the greater part of the tract is not

directly affected by the easement. Cf. Tennessee Gas Transmission Co. v. Teater, Ky., 252 S.W.2d 674.

William H. McConnell, of Cincinnati, a qualified expert appraiser, estimated the land taken for the easement to be worth $3,213 and the consequential damage to the remaining land as $17,400, making a total of $20,613. He arrived at this conclusion by valuing the 129 acres at $174,000, or $1,350 an acre, and regarding the easement as causing 10% damage to the remainder of the tract. The percentage was based upon several factors. They were, in general, that the severance of the land prevented it from being offered to industry as a continuous tract and that the fear of the gas line hazard, however unfounded it might be, depreciated the value of any real estate for development for residences. Further explanation was: "We have adjudged that loss of market value to be 10%, knowing that the minimum costs of merely transferring it through a qualified agent would involve no less than 5%. We feel that an additional 5% would be lost in announcing to a potential buyer that the problem of an easement exists, plus the fact that no building can be placed over the top of that pipe line."

We cannot follow the reasoning in the deduction of 5% in value as the minimum cost of "transferring it through a qualified agent." It seems that the witness had not considered the existence of the oil pipe line; at least he did not undertake to value the property without that easement. Moreover, in his estimate of $17,400 incidental damages to the 129 acres he included the 2.38 acres actually taken, which he had previously valued at $3,213. Eliminating this duplication, his valuation would be about $14,190. Nor, did he consider the fact that some of the developed southwest corner had been sold by the Longs. This was the highest value placed by any witness, and it was *less* than the sum of the $15,000 verdict for incidental damages.

Another witness for the appellees, John W. Spilker, a Cincinnati real estate appraiser, eliminated from his evaluation the portions of the 129-acre tract and the 90-acre tract which had been developed, but considered the part of the 90 acres which had not been developed and made his estimates upon an area of 152 acres. He found that acreage to be worth $286,000 without the easement and $272,500 with the easement upon it, or a difference of $13,500. This was broken down into $4,522 for the land taken and $8,978 for damage to the residue. His reasoning strikes us as sounder than that of the witness McConnell; however, he went outside of the 129-acre tract and improperly considered part of the 90-acre contiguous parcel. We say improperly, because damages to the 90 acres were not in issue. The petition for condemnation was over a 129-acre tract, and the landowners did not by pleading seek to include in the assessment of damages any part of their other land and made no claim of entity or unity of the tracts except in their offered instructions, which were refused. See Bullitt v. Commonwealth, Ky., 298 S.W.2d 290. Reference may be made to Annotation, "Unity or contiguity of properties essential to allowance of damages in eminent domain proceedings on account of remaining property," 6 A.L.R.2d 1197, and City of Middlesboro v. Chasteen, 285 Ky. 427, 148 S.W.2d 295. It is sufficient to point out without analysis that Spilker's opinion of fair compensation for the easement is approximately $2,000 more than the verdict, and his estimate of $9,000 damage to the residue and part of other land is less than the verdict for that item, the whole being $4,000 *less* than the total verdict

We do not find where these two witnesses were informed as to the legal definition of market value of land as given in Commonwealth v. Combs, 244 Ky. 204, 50 S.W.2d 497, and in many other condemnation cases. Some other witnesses gave

estimates of the value of the Long land at from $1,500 to $2,000 per acre.

The witnesses for the company minimized the value of the land for industrial use because of its rough terrain, 60% of it being waste land.

The principal appraisers introduced by the company were Tennison and Carran, real estate brokers of Kenton and Campbell Counties, and McCartt, county engineer of Kenton County. These witnesses went into much detail as to their bases of valuation, which included sales of comparative property. They specifically referred to the fact that only an easement was being taken rather than the entire title to 2.38 acres, and they seem to have understood the meaning of market value. Their respective valuations for the land taken were, in round figures, $1,000, $1,100 and $1,360, or an average of approximately $1,150, and for the incidental damages, $500, $1,012, and $1,200, or an average of approximately $900, the total being $2,260.

Thus, to sustain the verdict of $17,500, we have the unsatisfactory estimate by one witness for the owners of $20,613 (and that included the duplication of $3,213, making his real valuation $100 *less* than the verdict) and of another of $8,978 as fair compensation, which was about one-half the verdict. For the appellant we have the average evaluation of only $2,260, based upon a more persuasive character of testimony.

This court, of course, recognizes that it is the prerogative of the jury to weigh the evidence. However, this verdict comes within the "first blush" rule, which requires that a verdict be set aside when the amount is so excessive and exorbitant that it appears to have been returned in reckless disregard of the evidence and the law as given by the court, and, in cases of this kind, where the amount of the verdict reflects a purpose of the jury to unjustly enrich their neighbor at the unfair expense of the public service corporation.

Accordingly, the judgment is reversed.