**Ruby HANEY, Administratrix of the Estate of Alene Faye Haney, Deceased, Appellant,**

v.

**CITY OF LEXINGTON et al., Appellee.**

Court of Appeals of Kentucky.

May 22, 1964.

Dissenting Opinion June 5, 1964.

Rehearing Denied March 5, 1965.

Darrell B. Hancock, Fowler, Rouse, Measle & Bell, Lexington, for appellant.

Charles R. Zimmer, Richard S. Smith, Lexington, for appellee.

MOREMEN, Judge.

Alene Faye Haney, age seven, met her death by drowning in the Woodland Park swimming pool in Lexington. The administratrix of her estate filed suit against the City and alleged that the child's death was caused by negligent operation of the pool by the City of Lexington. The City defended on the ground that maintenance and operation of parks and recreational facilities are classified as governmental—not proprietary—functions and, therefore, a municipal corporation is not liable for

the results of negligence in the operation of such facilities. The circuit court, under ample authority, dismissed the complaint. See V. T. C. Lines, Inc. v. City of Harlan, Ky., 313 S.W.2d 573; Baker v. City of Lexington, Ky., 310 S.W.2d 555; and City of Louisville v. Pirtle, 297 Ky. 553, 180 S.W.2d 303.

So, once again, we are called upon to examine this legal anachronism of municipal immunity from liability for tort. In 41 N.C.L.Rev. 290, 291 (1963), this is said:

"There is probably no tenet in our law that has been more universally berated by courts and legal writers than the governmental immunity doctrine. The criticisms are wide-ranging and highly varied. Some common examples are: that it is unfair to impose upon the individual the burden of his damage, rather than upon the entire community where it justly belongs; that by denying a remedy for a wrong, the doctrine results in the deprivation of life, liberty, and property without due process of law; and that the doctrine runs counter to a basic concept underlying the law of torts, that is, that liability follows negligence."

We pointed out in V. T. C. Lines, Inc. v. Harlan, Ky., 313 S.W.2d 573, that this Court in late years has accepted the theory with reluctance and has seized upon almost any excuse, however flimsy, to grant relief to any person harmed by negligence of a municipal corporation. The acceptance or use of a theory does not prove the truth or validity of the rule of law it supports. If its worth has been proven by extended experience, we can be content with that theory. But when a theory supporting a rule of law is not grounded upon sound logic, is not just, and has been discredited by actual experience, it should be discarded, and with it, the rule it supports. As stated in Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457, 460, "The rule of governmental immunity for tort is an an-

achronism, without rational basis, and has existed only by the force of inertia."

Even the origin of this doctrine contains some elements of the mysterious. Some writers assume that it is a direct outgrowth of the divine right of the king who could do no wrong. But insofar as municipal or county or local district communities are concerned, it is generally agreed that the application of the immunity doctrine grew out of Russell v. Men of Devon, 2 T.R. 667, 100 Eng.Rep. 359 (1788), which involved a tort action against an unincorporated county. In the Muskopf case this analysis of Men of Devon was made:

"The action was disallowed on two grounds: since the group was unincorporated there was no fund out of which the judgment could be paid; and 'it is better that an individual should sustain an injury than that the public should suffer an inconvenience.' 100 Eng.Rep. 359, 362. The rule of the Russell case was first brought into this country by Mower v. Inhabitants of Leicester, 9 Mass. 247, 249. There the county was incorporated, could sue and be sued, and there was a corporate fund out of which a judgment could be satisfied. Ignoring these differences, the Massachusetts court adopted the rule of the Russell case, which became the general American rule."

It is equally hard to determine how this doctrine became imbedded in the law of our Commonwealth. Apparently we started without it because in Prather v. City of Lexington, 52 Ky. (13 B.Mon.) 559, 560 (1852), this was said:

"Where a particular act, operating injuriously to an individual, is authorized by a municipal corporation, by a delegation of power either general or special, it will be liable for the injury in its corporate capacity, where the acts done would warrant a like action against an individual. But, as a general rule, a corporation is not responsible for the unauthorized and unlawful acts of its officers, although done

under the color of their office; to render it liable, it must appear that it expressly authorized the acts to be done by them, or that they were done in pursuance of a general authority to act for the corporation on the subject to which they relate. (Thayer v. Boston, 19 Pick. 511.) It has also been held that cities are responsible to the same extent, and in the same manner, as natural persons for injuries occasioned by the negligence or unskillfulness of their agents in the construction of works for their benefit. (Ross v. City of Madison, 1 Smith 98; Mayor of Memphis v. Lasser, 9 Humph., 757.) And where a city corporation is bound to keep the streets and sewers of the city in proper repair, it is liable to damages if any person be injured by its neglect to have such repairs made, (The Mayor, etc. v. Furze, 3 Hill, 612; Mayor of Linn v. Turner, Cowp., 86.)" Recovery was denied in the foregoing case, however, because the Court determined there was no duty imposed upon a municipal corporation to protect against mob violence. (To remedy this condition a statute fixing liability upon the city was enacted. KRS 411.100.)

We will not trace the history of the attempt of the courts to lessen the severity of the rule of municipal immunity. It is sufficient to say that courts made distinctions between functions of the municipal corporation that purportedly were governmental or public and those thought to be proprietary or private, denying liability in the case of governmental functions, but imposing it in situations involving proprietary actions. At most, the distinctions seem to be contrived and without sensible basis. That which was proprietary in some states was deemed governmental in others. See Annot. 60 A.L.R.2d 1198, 1204 (1958).

The distinction we have made in this state has not resulted from uniform thought. As early as 1910 this Court stated: "It must be admitted that many of the distinctions that this court, as well as other courts of last resort, have made between what are designated the public and private powers, duties, and liabilities of municipal corporations, are difficult to understand." Kippes v. City of Louisville, 140 Ky. 423, 131 S.W. 184, 30 L.R.A.,N.S., 169. For instance, a city is liable for negligent failure to maintain its streets in a reasonably safe condition for public travel, Lampton & Burks v. Wood, 199 Ky. 250, 250 S.W. 980. It is not responsible for negligent acts which might occur when those same streets are sprinkled with water or oil. Kippes v. City of Louisville, 140 Ky. 423, 131 S.W. 184; and City of Georgetown v. Red Fox Oil Co., 228 Ky. 599, 15 S.W.2d 489. Nor is the city liable for injuries resulting from defects in a pathway (bridle path) located exclusively within a city park. City of Louisville v. Pirtle, 297 Ky. 553, 180 S.W.2d 303. The act of constructing a sewer is governmental in nature, with no liability, Smith's Adm'r v. Commissioners of Sewerage of Louisville, 146 Ky. 563, 143 S.W. 3, 38 L.R.A.,N.S., 151, but afterwards, if a negligent act of the city causes the basement of a connecting residence to be flooded, the city is responsible in damages. Board of Councilmen of City of Frankfort v. Buttimer, 146 Ky. 815, 143 S.W. 410. When a city owns and operates a cemetery, it functions in a proprietary capacity. City of Hopkinsville v. Burchett, Ky., 254 S.W.2d 333. When it operates a park, the action is governmental. Baker v. City of Lexington, Ky., 310 S.W.2d 555. We see no reason to belabor this point. We believe that all of these contrived devices resulted from the fact that the courts for many years have been repelled by the injustice of the rule of municipal immunity and have attempted to soften its harsh application by seeking a few escape hatches.

The reason the courts have denied their logical impulses and have continued to enforce an unfair rule of law is because they have been nurtured and sustained by another ancient and firmly fixed doctrine, that is, stare decisis et non quieta movere—to adhere to precedents and not to unsettle things which are established. But when

established things are no longer secure in a fast changing world, the courts should re-examine the precedents and determine if they provide a proper standing under present conditions.

The Supreme Court of Florida, in 1957, was the first to pierce the armor of municipal immunity. The reason for that action may be found in the well-reasoned opinion in Hargrove v. Town of Cocoa Beach, Fla., 96 So.2d 130, 60 A.L.R.2d 1193. In 1959, the Illinois Supreme Court, in Molitor v. Kaneland Community Unit District, 18 Ill.2d 11, 163 N.E.2d 89, 86 A.L.R. 2d 469, abolished the immunity from tort liability enjoyed by school districts. In that opinion are cited many cases and articles which demonstrate the incongruities resulting from attempts to fit particular conduct into one of the categories known as "governmental and proprietary." In January 1961, the Supreme Court of California, in Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457, rejected the doctrine of governmental immunity from tort liability. There, also, may be found a detailed analysis of the reasons why the doctrine arose and the reasons for its decline and subsequent abolition. Michigan followed this trend in Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1. In June 1962, the Supreme Court of Wisconsin, in Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618, followed by rejecting the doctrine of municipal immunity. In December of the same year, the Supreme Court of Minnesota, in Spanel v. Mounds View School District, 264 Minn. 279, 118 N.W.2d 795, found the doctrine of municipal immunity from tort liability to be archaic.

In November 1957, this Court in V. T. C. Lines, Inc. v. City of Harlan, Ky., 313 S.W.2d 573, criticized the doctrine and quoted with approval certain language from the opinion of the Florida Court, but nevertheless concluded: "We must make a choice as to whether the change in such a rule should be made by the legislature or by us. The majority of the court believes that the change addresses itself to legislative discretion and that we must content ourselves only with criticism of the rule which we have created." We think we were incorrect in taking such a position. The very foundation upon which such an attitude is based is not a solid one. We have no reason to believe that the members of the legislature approve all existing common law rules concerning tort actions; in fact, many members of that body, when acting in individual capacities as lawyers, have rather forceably indicated in briefs and petitions for rehearing that they do not. It seems to us that an equally reasonable assumption is that the legislature might expect the courts themselves to correct an unjust rule which was judicially created. The very machinery of the short biennial sessions of the General Assembly denies to it the time or, for that matter, the inclination to examine the various doctrines and theories of common law torts. A great number of the legislators are not lawyers nor are they interested in the details of law.

In each of the various jurisdictions rejecting immunity, the Court was concerned as to what application might be given the law. It is within the inherent power of the Supreme Court of any state to give such a decision either prospective or retrospective application without offending constitutional principles. Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360. But that right does not solve the difficult problem of what to do when a change in the law has been made. It must be remembered that we are not dealing here with the law of real property or other fields where stability and predictability are often of utmost concern. The rule of stare decisis is admittedly limited in the field of torts. Molitor v. Kaneland Community Unit District, 18 Ill.2d 11, 163 N.E.2d 89.

The opinions in the cases from the various Supreme Courts which we have discussed above have applied the rule in different ways. The Florida Court in the Hargrove case applied the rule to the instant case without reference to either prospective or retrospective application. In the Molitor case, the rule was applied prospectively except as to the case at bar, thereby rewarding the appellant for affording the Court the opportunity of changing an unjust rule of law. In the Muskopf case, apparently the change in rule was made to apply to cases present and past. In the Williams case it was said: "From this date forward the judicial doctrine of governmental immunity from ordinary torts no longer exists in Michigan." The rule in the Holytz case was applied to the case at bar and made prospective as to all others. In the Spanel case, as we understand it, the rule would not become effective until after adjournment of the next legislative session. It may be seen, therefore, that there was no unanimity in thought of the courts which have abolished the rule.

█ Three courses are open to us under such a situation as is presented here: (1) We can merely announce the new rule without applying it and suggest that it should be applied to cases brought to us in the future. (2) We can give relief to the appellant in the instant case, but deny it to any others whose injuries occurred before the date of the opinion; or (3) We can apply the rule in the instant case and permit all others who have been injured, not barred by the statute of limitations, to take advantage of the new rule. In the first instance the announcement of the new rule would be merely obiter dictum, which is frowned upon by some authorities. The second alternative gives the appellant a reward for his industry in again suggesting to the Court that it has been wrong. The third category, of course, permits retrospective relief. We see no particular reason why this third application of the rule is harmful. It is difficult to believe a city or any of its agents ever committed a tort deliberately and in reliance upon the doctrine of governmental immunity. We declare the law applicable not only to this case, but to all cases which may have arisen within the proper time of limitation.

█ In the V. T. C. Lines, Inc. case, this Court gave warning that it was dissatisfied with the rule of municipal immunity. We now recede from prior decisions which hold municipal corporations immune from liability for ordinary torts. We wish to make it plain, however, that this opinion does not impose liability on the municipality in the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions. We think the scope of abrogation adopted by Wisconsin is a proper one and we adopt it. It is stated in Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618, as follows:

"Perhaps clarity will be afforded by our expression that henceforward, so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity. In determining the tort liability of a municipality it is no longer necessary to divide its operations into those which are proprietary and those which are governmental. Our decision does not broaden the government's obligation so as to make it responsible for all harms to others; it is only as to those harms which are torts that governmental bodies are to be liable by reason of this decision."

It is not our intention at this time to consider the liability of any governmental unit other than that of a municipal corporation and its agents. In October 1963, in Foley Construction Co. v. Ward, Commissioner of the Department of Highways, Ky., 375 S.W.2d 392, the doctrine of state immunity was re-examined and reiterated.

Judgment reversed.

MONTGOMERY, J., dissenting.

MONTGOMERY, Judge (dissenting).

I respectfully dissent because I feel it is inappropriate for this Court, in effect, to legislate by changing a long-standing rule of law. This problem was presented squarely to the General Assembly in V. T. C. Lines v. City of Harlan, Ky., 313 S.W.2d 573, in the following language:

"Regardless of how the majority of the personnel of this court may feel at the present time concerning whether we should follow the path marked by the Florida Court, we must recognize that we are faced with a judicial problem which results from the fact that the immunity rule (although never clearly defined) has become so imbedded in the common law of this state over the years that it has become a definite part of our mores. We must make a choice as to whether the change in such a rule should be made by the legislature or by us. The majority of the court believes that the change addresses itself to legislative discretion and that we must content ourselves only with criticism of the rule which we have created."

The legislative power of the Commonwealth of Kentucky is vested in the General Assembly. Kentucky Constitution, Sections 27 and 29. There is an express prohibition against the exercise of this power by any person or collection of persons other than the General Assembly. Kentucky Constitution, Section 28.

Since the invitation to act was extended to the General Assembly in V. T. C. Lines in 1958, the General Assembly has met in regular session in 1960, 1962, and 1964. Numerous special sessions have been called in which this subject could have been included if any change in this law had been deemed necessary or desirable. No action has been taken on this matter by the General Assembly; not even a bill has been introduced. Inasmuch as the legislative branch of the government is supposed to reflect public sentiment and the changes

therein and since this Court recognized municipal immunity as a proper subject for the exercise of the legislative power in V. T. C. Lines, I feel that it is highly presumptuous for the judicial branch of the government now to usurp the recognized prerogative of the legislative branch and to change the law of municipal immunity.

STEWART, J., joins in the dissent.